## NATIONAL LABOR RELATIONS BOARD
### v.
### KAISER ALUMINUM & CHEMICAL CORP.
#### No. 14019.

United States Court of Appeals Ninth Circuit.
June 28, 1954.

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Samuel M. Singer, William J. Avrutis, Attys., N.L.R.B., Bernard Dunau, Attorney, N.L.R.B., Washington, D. C., for petitioner.

Gordon Johnson, San Francisco, Cal., Walter R. Farrell, Morris L. Myers, Oakland, Cal., for respondent.

Before HEALY, ORR and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

In 1950, pursuant to government demand, respondent changed a working schedule in the maintenance department of its Trentwood mill. Under the bargaining agreement, there were meetings

with the representatives of United Steel Workers of America, CIO, the bargaining unit, which objected to the change, but respondent insisted the schedules be placed into effect at a set deadline. Notwithstanding a "no strike" clause, absenteeism in the maintenance department, where a majority of employees were affiliates of A F of L craft unions prior to organization on a plant basis, reached 50.6 per cent and justified the Board finding that "a work stoppage in the nature of a strike" was involved. Respondent issued suspension slips for 111 employees for not reporting for work and 94 for inciting the stoppage. Grievance hearings were held under the contract. The company reinstated by far the greater number of those to whom suspension slips were given. In some cases, these restorations to duty carried pay during the period of layoff. 16 men were finally discharged, including Booth, Sullivan and Patten, whose discharges are here in question.

Upon complaint filed with the Board, a Trial Examiner took evidence at a series of hearings, and found that (1) there was a strike (2) violative of the "no strike" clause, (3) respondent was justified in discharging the 16 strikers, including those here involved, (4) the charge that these 16, including Booth, Sullivan and Patten, were discriminatorily discharged on the ground that these 16 were A F of L sympathizers must be rejected, (5) all these discharges were for participating in an illegal strike or for supporting it and urging others to participate in it, (6) respondent, through Philip E. Coyle, acted upon evidence which furnished reasonable grounds to believe, and actually discharged these men in the conviction in good faith, that all these men had supported the work stoppage, and (7) the fact that respondent reinstated other employees who engaged in the same conduct did not invalidate the discharge of the strikers.

The Board found the record was sufficient to support each of these discharges where the cause was failure to report to work on the day of the strike but held that the finding as to Booth, Sullivan and Patten, respectively, that the discharge was for aiding, abetting and encouraging the strike, was erroneous.

Based upon this finding as to the discharge of three men out of the two hundred five who were given suspensions, the Board ordered respondent (1) to cease and desist from discriminating against employees to discourage membership in or support of a labor organization, (2) or in any like or related manner restraining or coercing its employees in their statutory right to join or assist labor organizations or engage in concerted activities, (3) to reinstate the three employees with back pay, and (4) to post appropriate orders. This is the order which the Board petitions the Court to enforce.

A careful and impartial review of the record as a whole indicates indisputably that there is no evidence to support the issuance of the drastic cease and desist clause of this order. The whole basis for this severe clause is the conclusion of the Board, contrary to the Examiner, that the discharges of three men out of the great number who had some connection with the illegal stoppage were discriminatory and actually were caused by (1) enmity of the management for A F of L affiliates, and (2) the attendance of each of these men upon a union meeting of the CIO bargaining unit.

These grounds seem mutually contradictory. The record discloses that the plant was organized with a CIO bargaining unit for many years, but that the particular unit where the bulk of the stoppage occurred was composed mostly of former A F of L affiliates. The interunion rivalry had virtually ceased, and all recognized that an aluminum mill is necessarily organized upon a unit basis. The jurisdictional activity had ceased to all intents and purposes.

Now, even though all but 16 have been restored to duty, notwithstanding the Trial Examiner and the Board itself have found that 13 of these men, who were former A F of L members and

took part in the former jurisdictional activities, were properly discharged because of failure to report for work on the day of the stoppage, the Board, contrary to the Trial Examiner, assumes to conclude that enmity of the A F of L was the motive of discharge of these three alone.

It is a salient point that the failure to report for work was an undeniable fact proved by the record. The assumed anti-A F of L bias is an inference drawn by the Board which was not found by the Trial Examiner and of which the record shows scarcely a scintilla of evidence, and this apparently relates to a condition long in the past. The Trial Examiner suggests that the conclusion that union activities might have had something to do with the discharges is speculative and does not survive objective examination of the evidence. Evidence that attendance at a CIO union meeting by these three former A F of L affiliates was the cause of their discharges is wholly lacking. About three hundred employees attended these meetings. Of the 94 suspension slips issued for aiding, abetting and encouraging, all except these three have been restored to duty. Many of these were formerly members of the A F of L union. The Board created this supposed ground of discharge. There is no evidence in the record upon the point and it is not a proper inference from any testimony.

Since there was no interference with the right to attend a union meeting, a protected activity, and no deprivation of any other protected right of a union, there was no basis for the cease and desist clause upon either of the grounds chosen by the Board.

Nor can the provision of the order relating to restoration of these three men with back pay be upheld. The charge of the complaint is that these three particular discharges were discriminatory. Discrimination relates to the state of mind of the employer. "The relevance of the motivation of the employer in such discrimination has been consistently recognized * * *."[1] The General Counsel had the burden of the issue. Substantial evidence must have been adduced (1) to show the employer knew the employee was engaging in a protected activity, (2) to show that the employee was discharged because he had engaged in protected activity, and (3) to show the discharge had the effect of encouraging or discouraging membership in a labor organization. Although the Board is entitled to draw reasonable inferences from the evidence, it cannot create inferences where there is no substantial evidence upon which these may be based. Unless there is reasonable basis in the record for making of the three essential findings, the employer, who is permitted to discharge "for any reason other than union activity or agitation for collective bargaining with employees"[2] need not justify or excuse his action. Here we hold that the General Counsel did not carry the burden and introduce substantial evidence upon any of the three salient points of discrimination.

Notwithstanding this, the employer did introduce substantial and convincing evidence that the discharges were for valid cause and were not discriminatory. The only direct evidence upon the point is that of Coyle and the other supervisors who made the decisions for respondent. Their testimony is definite as to the information on which they acted. It is positive that they intended to base the discharges on the ground of aiding, abetting and encouraging the illegal strike. There was no controverting testimony. The circumstances recited above in relation to the previous clause of the order seem strongly corroborative of the direct and positive recitals of the managers of the company. The sole

1. Radio Officers' Union of the Commercial Telegraphers Union, AFL v. National Labor Relations Board, 347 U.S. 17, 43, 74 S.Ct. 323, 337, 98 L.Ed. 251.

2. Associated Press v. National Labor Relations Board, 301 U.S. 103, 132, 57 S. Ct. 650, 655, 81 L.Ed. 953.

question upon which the Board could base a ruling that the discharges were discriminatory was that they did not believe Coyle and other witnesses of respondent who testified as to the reasons for the discharges.

 Here again, the Board is in square conflict with the evidence and also the findings of the Trial Examiner, based upon the credibility which he extended to Coyle. In the first place, the Examiner found that there was reasonable ground for Coyle to believe each of these men had "supported the work stoppage and urged others to participate in it." Second, he found that Coyle had acted on the reasons to which he testified, namely, that these men had encouraged the stoppage. The Examiner makes the express finding that Coyle acted in good faith upon this basis. On the record as a whole, it cannot be said that there was any other cause for these discharges except the belief that these men had abetted the strike. It was erroneous for the Board to reverse the findings of the Examiner upon the credibility which the latter accorded Coyle and other key witnesses of respondent. Plainly, the Board tried the issue of the credibility of Coyle in claiming to have discharged each of these men in the good faith belief that each had incited, aided or abetted the stoppage. The question whether the acts were committed by the three men is, of course, immaterial. The activity was not in a protected zone, since the stoppage or strike was illegal. Therefore, respondent had the absolute right of discharge.

Some other matters should have notice. Respondent claims that the complaint as to Booth should be dismissed because it was not filed within the time limited by the Act. It is also contended that the complaint as to Sullivan should have been dismissed since the grievance procedure required by the contract with respondent was not followed. A motion to dismiss the cause was made and exception taken to the failure to treat as res adjudicata and admit in evidence the judgment of dismissal of Hon. Sam Driver in an action brought by these three men and others in the United States District Court for the Eastern District of Washington, seeking reinstatement with respondent, with back pay, on the ground that each had been wrongfully and discriminatorily discharged. We pass these because of our holding that the record as a whole does not support the findings, conclusions or order of the Board.

There is then no substantial evidence to support the final conclusions of the Board. The Trial Examiner found facts as to each which negative the inferences which the Board attempted to draw. Each of his findings of fact was based upon the credibility which he extended to witnesses whom he alone saw. There is no substantial support in the record as a whole for the contrary findings and conclusions of the Board upon a cold record.

Enforcement of the order in all parts is refused.