**ELECTROMEC DESIGN AND DEVELOPMENT COMPANY, Inc.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 22464.

United States Court of Appeals
Ninth Circuit.

March 27, 1969.

**632**

R. L. Hofvendahl (argued), of Cottrell, Hofvendahl & Roessler, San Jose, Cal., for petitioner.

Leon M. Kestenbaum (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., Washington, D.C., Roy O. Hoffman, NLRB, San Francisco, Cal., for respondent.

Before JERTBERG and CARTER, Circuit Judges, and BYRNE,* District Judge.

JAMES M. CARTER, Circuit Judge.

Electromec Design and Development Co., Inc. (hereafter Electromec), petitions to review an order of the National Labor Relations Board, pursuant to Sec. 10(f) (29 U.S.C. § 160(f)), of the National Labor Relations Act as amended (61 Stat. 136, 73 Stat. 519), and the Board petitions to enforce the order under Sec. 10(e) of the Act, 29 U.S.C. § 160

(e). The Board's decision appears at 168 N.L.R.B. 107, 67 L.R.R.M. 1067 (1967).

## THE QUESTIONS PRESENTED

Two questions are presented; (1) whether the four discharged employees, whose reinstatement was ordered by the Board, engaged in concerted action which was protected by the Act, and whether there was substantial evidence to support the Board's Findings of Fact, Conclusions of Law and Order; and (2) whether the denial of Electromec's motion to take depositions prior to hearing before the trial examiner, was a denial of due process and reversible error.

## DISCUSSION

*(1) Concerted action under the Act; the Board's Findings and Order.*

In substance, the trial examiner found concerted action, but concluded it was not protected under Sec. 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1). The Board approved the findings of the trial examiner as to the facts but concluded the employees' concerted action was protected under the Act, and that Electromec was therefore guilty of an unfair labor practice. Electromec was ordered to offer reinstatement to the four discharged employees and to tender back pay.

We have no trouble in determining that the findings were supported by substantial evidence. A summary of the facts follows:

Robert Saxer, Davy Mooney, Wilfred Gilbert and Charles Pickelman were tool and die makers employed by Electromec. During February 1966, a representation election was held in which a union was rejected. During March 1966, Pickelman, Davy Mooney and Gilbert, along with two other tool and die men met with the corporation's president, Padgett, and requested that Good Friday be treated as a holiday; the request was granted. Mid July 1966, Saxer asked the shop manager for a raise and received a

---

* Hon. William M. Byrne, Senior United States District Judge, sitting by designation.

5 cent per hour increase; he expressed his dissatisfaction. A request six weeks later for a further increase was refused. Saxer then urged other workers to ask for raises. Davy Mooney, during September 1966, made a request for a pay raise. Shortly after Labor Day, Saxer asked the machine shop manager, Porschien, about the method of computing holiday pay for a worker named Ford. Porschien asked Saxer whether he was "some sort of committeeman or something for the group." Saxer replied, "I am trying to find out what happened— if what [sic] happens to one man in the shop [sic] can happen to another man. We want the policy."

About mid September, the employees of the machine shop met to discuss the formulation of demands to present to management. On September 21, the group met with president Padgett and vice president Vasta. Five demands were presented: (1) increased vacation pay; (2) improved hospitalization; (3) sick leave; (4) modification of holiday pay computation; (5) overtime pay for Saturdays. The president promised to consider the hospitalization demand, but rejected the other four.

About three weeks later on October 8, a Saturday, while the demands were still unanswered, Saxer approached the shop manager and asked for a raise; it was denied. Thereupon, Saxer gave notice that as of October 14, he would resign. Subsequently on the same day Saxer, Davy Mooney, Gilbert and Pickelman were granted permission to leave work at lunch time. Saxer told the other employees of his plan to quit; the group decided that it would be a good time to "wake up management." At 11:24 a. m. all the employees of the machine shop walked off the job.

During the remainder of Saturday and part of Sunday, personnel officials telephoned the men who had walked off the job in an attempt to determine their reasons for leaving. Various evasive reasons were given. However, three men stated reasons which related to the working conditions and unrest in the machine shop. Gilbert stated that he was unhappy with the 15 cent difference between his rate of pay and the top man in the shop. He refused on invitation to come to the plant to discuss the matter by stating, "I will see you tomorrow as a group [sic]." Bates, an employee not fired, stated that there was a "mishmash mess in the shop and that he was unhappy with the whole situation." He later stated at the plant office, after responding to an invitation to come in and talk about the matter with management, that he had to leave with the rest of the men since he had to live with them. Will Mooney, brother of Davy Mooney, stated that he had left because he "was tired of working overtime."

On Sunday evening, October 9, vice president Vasta and president Padgett, with general information of the walkout and the replies to the telephone calls in mind, decided to fire toolmakers Saxer, Dave Mooney, Gilbert and Pickelman. The men were informed the next day of the decision. These dismissals were the basis for the complaint which was subsequently filed with the N.L.R.B.

■■ The scope of our review is limited to ascertaining whether substantial evidence exists in the record considered as a whole to support the findings and conclusions made by the Board. Conflict between the Board and the examiner is but another factor to be considered in determining whether the Board's findings and conclusions are supported by substantial evidence. "The significance of his [the examiner's] report, of course, depends largely on the importance of credibility in a particular case." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). A reviewing court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. N.L.R.B., 340 U.S. at 488, 71 S. Ct. 456; accord, Shattuck Denn Mining

Corp. v. N.L.R.B., 362 F.2d 466, 469–470 (9 Cir. 1966); N.L.R.B. v. Holly Bra of Calif., Inc., 405 F.2d 870 (9 Cir. Jan. 16, 1969); N. L. R. B. v. Miller Redwood Co., 407 F.2d 1366 (9 Cir., 1969).

Here the Board and the examiner differ only as to the conclusions of law drawn from the facts, i. e. purpose of the walkout and knowledge on behalf of the employer. This type of determination can be made just as competently by the Board; the examiner's special acquaintance with the testimony is not the determining factor in deciding what legal result is to flow from the facts.

■ Spontaneous work stoppages by employees to protest grievances concerning working conditions are protected concerted activities within the scope of Sec. 7 of the Act, 29 U.S.C. § 157, Elam v. N. L. R. B., 129 U.S.App.D.C. 388, 395 F.2d 611, 613 (1968). Cf. Morrison-Knudsen Co. v. N.L.R.B., 358 F.2d 411, 413 (9 Cir. 1966); N. L. R. B. v. Phaostron Inst. & Elect. Co., 344 F.2d 855, 858 (9 Cir. 1965).

■ The fact that the employees here failed to present a specific demand at the time they walked out does not cause their walkout to lose its protected status. As the Supreme Court said in N. L. R. B. v. Washington Aluminum Co., 370 U.S. 9, 14, 82 S.Ct. 1099, 1102, 8 L.Ed.2d 298 (1962):

"The language of § 7 is broad enough to protect concerted activities whether they take place before, after or at the same time such a demand is made."

Furthermore, the decision by the employees to walk out does not have to be the most reasonable choice of action available in order for them to be protected by Sec. 7, 370 U.S. at 16, 82 S.Ct. 1099. Here as in the *Washington Aluminum* case:

"The * * * [men] were part of a small group of employees who were wholly unorganized. They had no bargaining representative and * * * no representative of any kind to present their grievances to their employer. Under these circumstances, they

had to speak for themselves as best they could." 370 U.S. at 14, 82 S.Ct. at 1103.

We agree with the conclusions of the Board in this case:

"The general unrest exhibited by tool and die makers and other machine shop personnel concerning wage rates and overtime, as well as Respondent's denial of the benefits specifically requested on September 21, when considered against other possible motivations for the stoppage, in our opinion, render the conclusion inescapable, on the basis of objective evidence, that the walkout was in furtherance of the employees' efforts to make management more responsive to their demands for various improvements in existing employment conditions. Accordingly, we find that the walkout * * * was protected activity within the intendment of Section 7 of the Act." 168 N.L.R.B. at 67 L.R.R.M. at 1069.

■ Like the Board, we think that when the decision was made to discharge the men the management of Electromec was aware that the walkout was an expression of general dissatisfaction with working conditions in the shop. Finally, the finding by both the examiner and the Board that the discharges were motivated by the men's participation in the walkout is well supported by evidence in the record.

■ Electromec makes two more contentions. The first is that Saxer was not discharged, but that the corporation merely "accelerated acceptance" of his voluntary termination. This is a distinction without a difference. The final contention is that the men were not protected because each was given permission to leave work early on the day of the walkout. This has no relevance to the walkout and the resulting discharges. Section 7 of the Act, 29 U.S.C. § 157, does not require that an employee engage in concerted activity on company time before he is afforded protection under the Act.

*(2) The Trial Examiner's denial of Electromec's request to take depositions prior to the initial hearing.*

■ Since there is no specific provision in the National Labor Relations Act for discovery procedure, N. L. R. B. v. Globe Wireless, Ltd., 193 F.2d 748, 751 (9 Cir. 1951), it is the responsibility of the Board to formulate its own rules as to when discovery is available to a party, N. L. R. B. v. Vapor Blast Mfg. Co., 287 F.2d 402, 407 (7 Cir. 1961).

The regulations of the National Labor Relations Board relating to the conduct of hearings before the Board or Trial Examiner at 29 C.F.R. § 102.30 (1968) provide, in part:

"Witnesses shall be examined orally under oath *except that for good cause shown* after the issuance of a complaint, *testimony may be taken by deposition.*

"(a) * * * The regional director or trial examiner, as the case may be, shall upon receipt of the application, *if in his discretion good cause has been shown,* make and serve upon the parties an order * * *." (Emphasis added.)

In its "Application to Take Deposition" Electromec states as its reason for the request:

"Appellant has not, since the termination of the employment of the said individuals, communicated with them in any respect and has no knowledge concerning the contended unfair labor practices alleged in the complaint herein."

The Trial Examiner denied the application after finding that "good cause for granting [sic] application does not appear."

■ Although it is within the sound discretion of the trial examiner to grant or deny a request for the taking of depositions, a reviewing court still determines whether that discretion has been abused in its exercise. Only when the examiner makes a ruling which is demonstrated to clearly prejudice the appealing party, will a reviewing court find an abuse of discretion. N. L. R. B. v. Safway Steel Scaffolds Co., 383 F.2d 273, 277 (5 Cir. 1967); N. L. R. B. v. Wichita Television Corp., 277 F.2d 579, 585 (10 Cir. 1960); N. L. R. B. v. Gala-Mo Arts, Inc., 232 F.2d 102, 106 (8 Cir. 1956); N. L. R. B. v. Globe Wireless, Ltd., 193 F.2d 748, 751 (9 Cir. 1951).

■ The record shows that appellant had a full and fair hearing with ample opportunity to cross examine; no showing is made of denial of subpoena power to compel attendance of witness or lack of opportunity to present rebuttal evidence. The trial examiner did not abuse his discretion in denying the application to take depositions; appellant was not denied due process of law.

The order of the Board will be enforced.