## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## ROBERTSON INDUSTRIES, Respondent.

No. 75–1694.

United States Court of Appeals, Ninth Circuit.

Oct. 4, 1976.

Rehearing and Rehearing En Banc Denied Oct. 26, 1977.

---

Before ELY and WALLACE, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

Petitioner, the National Labor Relations Board (NLRB), seeks enforcement of its order issued against respondent, Robertson Industries (the Company), on January 30, 1975, which directed the Company to reinstate certain discharged employees with full back-pay and other privileges and granted further relief. 216 NLRB 62 (1975). The NLRB's order stems from its findings that the Company, *inter alia*, violated Section (8)(a)(1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), by discharging thirty-four employees on February 4, 1974, because they engaged in a protected work stoppage. The Company opposes enforcement of the order. This Court has jurisdiction pursuant to 29 U.S.C. § 160(e).

Upon review of the entire record, considered as a whole, we determine that the NLRB's findings and conclusions are supported by substantial evidence. Accordingly, for the reasons hereinafter stated, we grant the NLRB's application for enforcement of its order. *See, Electromec Design & Development Co. v. NLRB*, 409 F.2d 631 (9th Cir. 1969).

The relevant facts are more fully set forth in the decision and order of the NLRB rendered on January 30, 1975, in conjunction with the order here at issue. Briefly stated, the events leading up to the discharge of the employees by the Company in February, 1974, began in November, 1973, when fifteen to twenty workers engaged in a one-day work stoppage to protest problems caused by a heavy workload. The employees returned to work after being threatened with discharge by the Company.

Although no repetitions of the work stoppage occurred between November, 1973, and February, 1974, the employees did make efforts to attain union representation during this period. Union authorization

Michael F. Messitte, Atty. (argued), of N.L.R.B., Washington, D. C., for petitioner.

A. Patrick Nagel (argued), Irvine, Cal., for respondent.

---

* Honorable William H. Orrick, United States District Judge, Northern District of California, sitting by designation.

cards were obtained, and a petition for a representation election was filed with the NLRB by Local 509 of the United Auto Workers on January 18, 1974. Several days later, an agent of the Company interrogated an employee concerning the organizing activities.

Thereafter, on Friday, February 1, 1974, some of the employees attended a meeting at the union hall during regular working hours at which work-related problems and union representation were discussed. On that day thirty-four employees failed to report to work; fourteen were night-shift employees.

On Monday, February 4, 1974, all of the employees who had not worked on the previous Friday were fired. Several days later, the union filed an unfair labor practice charge, alleging that the Company discharged its employees for engaging in a protected work stoppage and also that it refused to bargain collectively with the union.

After a hearing on the charges, the administrative law judge (judge) found that the Company had unlawfully threatened employees in November, 1973, and that an agent of the Company unlawfully questioned an employee concerning union activities. These findings are not now at issue. However, the judge further concluded that the February 1 work stoppage was not protected since it was an attempt by employees to set their own terms and conditions of employment and was part of a pattern of recurring and intermittent partial work stoppages. In the view of the judge, the employees simply took the day off to go to an organizational meeting of the union. Accordingly, the judge ruled that the February discharges were not unlawful.

The NLRB affirmed the judge's decision except with respect to the February 4 discharges. It held that the February 1 incident was not part of a recurring pattern of half-work, half-strike activity. Moreover, it found a purpose of the February 1 meeting was to seek redress for work-related problems. Although the NLRB noted that the refusal of the employees to report to

work to attend the meeting was not the most prudent course which could have been taken, it held that the meeting was protected concerted activity to protest working conditions. Furthermore, the NLRB found that the Company knew of the concerted activity of the employees and that the discharges were motivated by a desire to fire those employees who had engaged in protected activity on February 1. Accordingly, the NLRB held that the discharges violated Section 8(a)(1) of the Act, which forbids employers to interfere with, restrain, or coerce employees taking concerted action for their mutual aid or protection. 29 U.S.C. § 158(a)(1).

■ It is well settled that employees have the right to engage in concerted activities for the purpose of protesting and forcing the improvement of working conditions. 29 U.S.C. § 157; *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962). Such concerted activity includes the right to walk off the job in protest against intolerable working conditions or excessive work demands. *NLRB v. Washington Aluminum Co., supra*; *First National Bank of Omaha v. NLRB*, 413 F.2d 921 (8th Cir. 1969); *Electromec Design & Development Co. v. NLRB, supra*.

■ However, it is also clear that employees may not engage in repeated, intermittent slowdowns or stoppages which are neither work nor strike. *Shelly & Anderson Furniture Mfg. Co. v. NLRB*, 497 F.2d 1200 (9th Cir. 1974). This is because the Act has been interpreted to prohibit employees from both drawing wages and attempting to put economic pressure on the employer at the same time.

In *Shelly & Anderson, supra*, the court discussed the elements necessary for concerted activity to be protected as follows:

"In order to be protected * * * the concerted activity must satisfy the following elements:

(1) there must be a work-related complaint or grievance; (2) the concerted activity must further some group interest; ■ a specific remedy or result must be

sought through such activity; and (4) the activity should not be unlawful or otherwise improper." *Id.* at 1202–1203.

In *Shelly & Anderson*, the stoppage took place on company time, at the plant, for a duration of about fifteen minutes; it was held to be protected. In *Washington Aluminum, supra, First National Bank, supra,* and *Electromec, supra,* employees walked off and remained off the job for several hours to a day. This, too, was held protected. And in *NLRB v. Good Coal Co.,* 110 F.2d 501 (6th Cir. 1940), *cert. denied,* 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400, a refusal to work on Labor Day and attendance at a labor rally were held to be protected.

■ In this case, the judge held that the November and February incidents were part of a recurring, unprotected work stoppage. Moreover, the judge held that the February 1 refusal to work was an unprotected attempt to set terms and conditions of employment. The NLRB reversed both of these findings. It is the NLRB, not the judge, which must be affirmed if there is substantial evidence on the record as a whole to support its conclusions. *Electromec Design & Development Co. v. NLRB, supra*; *see also, Oil, Chemical and Atomic Wkrs. Int. U., Local 4–243 v. NLRB,* 124 U.S.App.D.C. 113, 362 F.2d 943, 945–946 (1966).

■ Here we find that there is substantial evidence in the record to support the NLRB. Two one-day work stoppages in three months do not give rise to a repeated pattern of half-strikes. *See, Shelly & Anderson Furniture Mfg. Co. v. NLRB, supra,* 497 F.2d at 1203. Moreover, there is ample evidence in the record, as more fully set forth in the NLRB's decision and order, to support the finding that the February 1 refusal to work was motivated, at least in part, by a dissatisfaction with the Company's working conditions. Similarly, the evidence in the record supports the NLRB's conclusion as to the Company's motive for the discharge.

The Company insists that the real reason that the employees refused to work on February 1 was their desire to attend the union meeting on company time. However, this suggestion does not explain the absence of the night-shift employees, who could have attended the meeting and still made it to work on time. More importantly, the NLRB found otherwise, and its conclusion is supported by the record.

The Company points out that the mere refusal to come to work in order to attend a union meeting has been held not to be protected activity. *Gulf Coast Oil Co.,* 97 NLRB 1513 (1951); *Terri Lee, Inc.,* 107 NLRB 560 (1953). However, since the NLRB found that the refusal in this case was motivated by a desire to protest working conditions, these authorities, whatever their precedential value today, are not apposite.

Accordingly, the NLRB's application for enforcement of its order is granted.

WALLACE, Circuit Judge (dissenting):

I respectfully dissent. I conclude that the all-day work stoppage in question was not activity protected by section 7 of the National Labor Relations Act and that the company did not engage in an unfair labor practice in violation of section 8(a)(1) of the Act when it discharged employees for their absence on February 1.

In order for the discharge of employees to constitute an unfair labor practice, there must be substantial evidence that the employees were engaged in concerted protected activities. *Southwest Latex Corp. v. NLRB,* 426 F.2d 50 (5th Cir. 1970); *Indian Gear Works v. NLRB,* 371 F.2d 273 (7th Cir. 1967); *cf. NLRB v. Kaiser Aluminum & Chemical Corp.,* 217 F.2d 366 (9th Cir. 1954). In *Shelly & Anderson Furniture Manufacturing Co. v. NLRB,* 497 F.2d 1200 (9th Cir. 1974), we identified the four elements essential to protected status of concerted activity. Two of them were that "a specific remedy or result must be sought through such activity; and . . . the activity should not be unlawful or otherwise improper." *Id.* at 1203.

I. Specific Remedy or Result

On February 1, 33 employees of Robertson Industries failed to report to work. The record shows that at least 26 of those 33 attended a union organizational meeting lasting one hour. The other seven either did not attend or did not sign the attendance sheet. The administrative law judge found that the employees had simply taken the entire day off to go to a union organizational meeting, and that the discharge of those employees was lawful. The Board, reversing the administrative law judge on the lawfulness of the discharges, found the employees' attendance at the union meeting to constitute a protected work stoppage held to solve work-related problems.

Although it is clear that employees may engage in union organization on their own time, *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); *NLRB v. Whitfield Pickle Co.,* 374 F.2d 576, 578–79 (5th Cir. 1967), we have never held that attendance at a union meeting on company time is per se a protected activity. In order for such meetings to be protected, "a specific remedy or result must be sought through such activity." *Shelly & Anderson Furniture Manufacturing Co. v. NLRB, supra,* 497 F.2d at 1203.

I do not read the majority's opinion to hold that employees may take company time at whim to hold union organizational meetings. I do not believe the Act was intended to afford such protection. However, under the facts of this case, where organization for the employees' mutual aid and protection was nascent and where the purpose of the meeting was not routine or general but was to protest and seek remedies for specific working conditions, I agree that attendance by the 26 employees at the meeting was concerted protected activity. *NLRB v. Good Coal Co.,* 110 F.2d 501 (6th Cir.), *cert. denied,* 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400 (1940).

I do not feel, however, that this conclusion disposes of the issues involved here. From a finding that attendance at the union meeting was protected activity does not necessarily follow a conclusion that the entire work stoppage was similarly protected. The union meeting in question lasted from 1 p. m. to 2 p. m. About 14 of the men were not scheduled to begin work until 3 p. m. Presumably, these men could have both attended the meeting and worked. In fact, at least two other men did so. The employees assigned to the day shift could have worked the major portion of the day and then attended the meeting. In order to find that the work stoppage covering the entire two shifts was protected activity, there must be substantial evidence that the employees absented themselves for their entire work day in protest of a term or condition of their employment, not merely that their attendance at the union meeting constituted such protest.

The majority apparently infers from the fact that 14 employees could have both attended the meeting and gone to work that the refusal to work must have been in protest of working conditions. I find no substantial evidence to support such an inference. The record does not show that the men discussed absence from work in protest of working conditions. While they agreed to attend the meeting to resolve specific work problems, there was no evidence of an agreement not to appear at work in protest. The employees informed no one from the company that they intended to go to the union meeting or that they would be absent from work in protest of anything.

In this respect, this case is unlike *NLRB v. Good Coal Co., supra,* where the employees voted unanimously not to work on Labor Day. A union rally held that day was only incidental to their day-long work stoppage in stated protest of company policy. Distinguishable also is *Shelly & Anderson* where a work stoppage was for 15 minutes on company time. There the stated purpose of the demonstration was to protest the company's dilatory bargaining tactics and the company had ample notice of the purpose of the work stoppage. In contrast, here the record makes clear that there was no purpose of the employees to take the entire day off in protest of working conditions.

## II. Improper Activity

In addition, in *Shelly & Anderson* we said that, to be protected, "the activity should not be unlawful or otherwise improper." 497 F.2d at 1203. Concerted activity is not protected when it shows unnecessary disloyalty to the employer. *NLRB v. Local 1229, I.B.E.W.*, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953); *cf. Albrecht v. NLRB*, 181 F.2d 652 (7th Cir. 1950). In *Shelly & Anderson* the walkout consisted of a ten-to-fifteen-minute demonstration. The employer had prior notice of the walkout and, by his own admission, the demonstration did not severely disrupt his production schedule. Here, in contrast, the work stoppage was for an entire day, threatened severe damage to equipment and disrupted the company's business. Because the employer's La Palma plant is dependent in its production upon proper operation at the Los Alamitos plant where the work stoppage occurred, the adverse impact of the stoppage was felt in two plants. The union did not require an all-day meeting. In fact, the record shows that union leaders were willing to hold the meeting on a non-work day.

In view of the fact that it was possible for employees to accomplish the stated purpose of their absence from work, attendance at the union meeting, without severely disrupting the operations of their employer, I think it was incumbent upon them to do so. Thus their actions were "improper" as we used that term in *Shelly & Anderson*.

## III. Conclusion

I find insubstantial evidence, viewing the record as a whole, to support the Board's finding that the employees here were engaged in concerted protected activity during all of the work stoppage period.

Despite our duty to accept the Board's choice between two fairly competing inferences, *e. g.*, *Universal Camera Corp. v. NLRB*, [340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1956)], where there is insubstantial support in the record for the Board's inference . . ., we may accord respect for a contrary inference, particularly where, as here, such contrary inference was drawn by the Trial Examiner.

*Southwest Latex Corp. v. NLRB, supra*, 426 F.2d at 57. *See also Morrison-Knudsen Co. v. NLRB*, 276 F.2d 63, 70 (9th Cir. 1960), *cert. denied*, 336 U.S. 910, 81 S.Ct. 1082, 6 L.Ed.2d 233 (1961).

The petition to enforce the Board's order should be denied.