894 F.2d 36
 133 L.R.R.M. (BNA) 2292, 114 Lab.Cas. P 11,811
 PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA; Local 732 Teamsters;
William F. Genoese; Other Unnamed Pan Am Clerical and
Related Employees; Service Supply Clerks and Lead Service
Clerks in Airline Operations; and Nurses in Airline
Operations, Defendants-Appellees.
 No. 511, Docket 89-7831.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1989.
Decided Jan. 9, 1990.
 
 Ernest L. Garb, Pan American World Airways, Inc., New York City (Harry A. Rissetto, Bradford W. Coupe, and Nancy L. Vary, Morgan, Lewis & Bockius, New York City, of counsel), for plaintiff-appellant.
 Roland P. Wilder, Jr., Washington, D.C. (Carey R. Butsavage and Christy Concannon, Baptiste & Wilder, Washington, D.C., and Herbert K. Lippman, New York City, of counsel) for defendants-appellees.
 Before LUMBARD, MESKILL and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Pan American World Airways, Inc. ("Pan Am") appeals from Judge Glasser's denial of its motion for a preliminary injunction against intermittent work stoppages by Pan Am employees represented by the International Brotherhood of Teamsters and its affiliate, Local 732. We affirm.
 
 BACKGROUND
 
 2
 No dispute of material fact exists. Pan Am is an air carrier subject to the provisions of the Railway Labor Act, 45 U.S.C. Secs. 151-188 (1982) ("RLA"). The International Brotherhood of Teamsters and Local 732 ("IBT" or "the union," collectively) represent more than 6,000 employees of appellant Pan Am. Pan Am and the union have been parties to collective bargaining agreements since 1969. The most recent agreement expired on December 31, 1981, but was extended through December 31, 1984.
 
 
 3
 In September 1984, as the expiration date of the extension approached, Pan Am issued notices of proposed changes in the status quo as required by Section 6 of the RLA, 45 U.S.C. Sec. 156 (1982). These proposals were rejected by the union, and the parties negotiated without success in the succeeding years. In 1987 negotiations continued under the auspices of the National Mediation Board, again as required by RLA Section 6. In January 1988, the union offered to submit the outstanding issues to arbitration, but Pan Am refused. The Mediation Board subsequently terminated mediation, and after the statutory cooling-off period mandated by the RLA expired on February 21, 1988, both parties were legally free to engage in economic self-help measures. See 45 U.S.C. Sec. 155(b); Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 378-79, 89 S.Ct. 1109, 1115-16, 22 L.Ed.2d 344 (1969). Pan Am immediately implemented unilateral changes in rates of pay, rules, and working conditions based largely on the proposals it presented in 1984. Negotiations ceased, but the union did not strike. In November 1988, the union submitted proposals of its own, and negotiations resumed in February 1989.[1] Pan Am responded with a counterproposal in December 1988, but indicated that its position was still based generally on the proposals made in September 1984. On February 28, 1989, the parties met and discussed the proposals, but the meeting was not fruitful. From March through June 1989 the parties exchanged correspondence regarding negotiations but did not meet. Beginning on June 29, 1989, Pan Am employees represented by IBT began a series of intermittent job actions at various Pan Am facilities consisting primarily of hour-long work stoppages for union employee meetings and assemblies.
 
 
 4
 On August 1, 1989, Pan Am filed this action requesting a declaratory judgment, damages, and an injunction prohibiting such self-help measures by the union. Pan Am moved for a preliminary injunction. The motion was heard by Magistrate Chrein, who recommended that the injunction be denied. On August 18, 1989, Judge Glasser reviewed Pan Am's objections to the magistrate's decision and denied Pan Am's application for a preliminary injunction. Judge Glasser also denied Pan Am's motion to present additional testimony on the ground that both parties had sufficient opportunity to present testimony at the two-day hearing before the magistrate. Pan Am appeals from Judge Glasser's ruling.
 
 DISCUSSION
 
 5
 Pan Am argues that the union's self-help activities are unlawful under the RLA because: (i) the union has lost the right to engage in self-help, and (ii) intermittent strikes are impermissible as self-help. We disagree.
 
 
 6
 Under the RLA, disputes over the terms of new collective bargaining agreements--styled "major disputes," see Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, 306 F.2d 840, 845 (2d Cir.1962), in contrast to disputes over the meaning of existing agreements, styled "minor disputes," id.--are governed by certain procedural requirements. When a collective bargaining agreement is about to expire and one party desires changes in its terms, that party must serve notice of those proposed changes on the other party under RLA Section 6, 45 U.S.C. Sec. 156. The dispute is then subject to mediation under the auspices of the National Mediation Board. During mediation neither party may resort to self-help. If mediation is unsuccessful and one or both of the parties refuse to submit the controversy to arbitration, the parties must then observe a thirty-day cooling-off period before resorting to self-help. See 45 U.S.C. Sec. 155(b); Burlington N. R.R. v. Brotherhood of Maintenance of Way Employes, 481 U.S. 429, 445, 107 S.Ct. 1841, 1856, 95 L.Ed.2d 381 (1987). Once the "cooling-off" period has expired without an agreement, the parties may then resort to economic force--absent appointment by the President of an Emergency Board, a circumstance not pertinent to the present action.
 
 
 7
 It is beyond dispute in the instant case that the governing collective bargaining agreement has expired, the RLA's "major dispute" procedures have been exhausted, and no new agreement has been reached. The terms and conditions under which the IBT employees now work were unilaterally imposed by Pan Am in the exercise of its right of self-help. It now seeks to deny that right to its adversary. To that end, Pan Am argues that a new status quo has been created by changed circumstances and the passage of time and that the IBT must again exhaust the RLA's mediation and cooling-off procedures before engaging in self-help. Under Pan Am's theory, its unilateral imposition of working conditions in February 1988 created a "new" labor relations environment which, having remained undisturbed for a period of time, subsumed the "old" dispute between the parties. Pan Am further suggests that, by allowing the dispute to become dormant during a period when no negotiations took place, the union effectively waived or abandoned its right to strike.
 
 
 8
 We are skeptical that the union's intermittent work stoppages relate to "new" matters rather than the disputes outstanding since September 1984. The changed circumstances designated by Pan Am are no more than turnover in employees, changes in the structure of the workforce, Pan Am's financial difficulties, and alterations in the airline's agreements with various other employee unions. Such changes, however, are the inevitable consequence of the passage of time in a dynamic economy. Pan Am's concept of "new" issues is so elastic that, if adopted, it would force unions to strike when first free to do so or face the almost perpetual need to exhaust RLA "major dispute" procedures while employers impose unilateral terms and conditions of employment.
 
 
 9
 However, even if "new" issues are more narrowly defined, their existence would not require renewal of the entire RLA notice and mediation process. In Pan Am., 306 F.2d 840, a concededly "new" issue regarding crew complement, not raised in the original Section 6 notice, was introduced during negotiations. Nevertheless, we held that the union was free to strike without exhausting the "major dispute" procedures. It is the expiration of an agreement and a dispute over the terms of a new agreement that trigger the mandatory "major dispute" procedures. Absent a new agreement, those procedures need be exhausted only once. Certainly, the emergence of new issues after the procedures have been exhausted but before a strike occurs hardly entitles the employer to impose unilaterally the solutions it prefers while the union is forced to exhaust RLA procedures a second time.
 
 
 10
 We therefore also conclude that, once the RLA "major dispute" procedures have been exhausted, a hiatus in collective bargaining following the employer's unilateral imposition of terms and conditions of employment is irrelevant. The essential ingredient of a status quo that can be disturbed only after exhaustion of the "major dispute" procedures is a resolution of disputed issues accepted by each side. No such resolution exists here. The union's consistent posture toward the terms and conditions imposed by the airline on February 21, 1988 has been one of resistance reflected in its open disagreement with those terms and conditions.
 
 
 11
 Pan Am in effect argues that the courts should create an "expiration date" for self-help rights under the RLA. The parties do have a continuing statutory obligation to utilize their best efforts to reach a collective bargaining agreement,[2] and that obligation continues after the parties are released to their self-help remedies. See Chicago & N.W. Ry. v. United Transp. Union, 402 U.S. 570, 574-75, 91 S.Ct. 1731, 1733-34, 29 L.Ed.2d 187 (1971); Jacksonville Terminal, 394 U.S. at 378, 89 S.Ct. at 1115 (statutory scheme for settlement of disputes preserves ultimate right to self-help); see also Pan Am., 306 F.2d at 846 (after cooling-off period "further progress toward the determination of the controversy will be left entirely to the interplay of economic forces" and parties may resort to self-help). The RLA, however, does not include a time limit within which either party must use or lose its right to self-help. The courts have no business making up such a limit out of thin air, and they have even less reason to adopt a rule that may tilt the balance of economic power in favor of one party. Because only the employer can impose unilateral terms and conditions of employment, the establishment of a new status quo requiring exhaustion of "major dispute" procedures would seem, under Pan Am's theory, to lie largely in the carriers' hands.
 
 
 12
 Pan Am argues in the alternative that intermittent work stoppages are an impermissible form of self-help under the RLA. We again disagree. The Norris-LaGuardia Act, 29 U.S.C. Secs. 101-115 (1982), deprives federal courts generally of jurisdiction to issue injunctions in labor disputes. The Supreme Court has declined to approve the use of injunctions to limit self-help under the RLA in light of the Norris-LaGuardia Act except where a violation of a specific mandate of the RLA has been shown. See Burlington N. R.R., 481 U.S. at 447, 107 S.Ct. at 1858 ("Faced with a choice between the ambiguity in the RLA and the unambiguous mandate of the Norris-LaGuardia Act, we choose the latter.").
 
 
 13
 Pan Am argues that intermittent work stoppages are illegal under the RLA because such stoppages are "unprotected" activity under the National Labor Relations Act ("NLRA"), 29 U.S.C. Secs. 151-169 (1982). See National Labor Relations Bd. v. Robertson Indus., 560 F.2d 396, 398-99 (9th Cir.1976). The Supreme Court has emphasized, however, that NLRA principles "cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly, with due regard for the many differences between the statutory schemes." Jacksonville Terminal, 394 U.S. at 383, 89 S.Ct. at 1118; see also Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants, --- U.S. ----, 109 S.Ct. 1225, 1233, 103 L.Ed.2d 456 (1989). One relevant difference between the statutory schemes is that primary enforcement of the NLRA is by a specialized agency, the National Labor Relations Board, which is the original source of the rule that intermittent work stoppages are unprotected activity. The range of permissible statutory glosses available to such an agency is greater than that afforded courts, and we therefore decline to embark on a similar course of drawing fine distinctions between forms of self-help under the Railway Labor Act. See Ruby v. American Airlines, Inc., 323 F.2d 248, 255-56 (2d Cir.1963), cert. denied, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964).
 
 
 14
 In any event, intermittent work stoppages are not unfair labor practices under the NLRA. See National Labor Relations Bd. v. Insurance Agents Int'l Union, 361 U.S. 477, 483, 487-88, 492-95, 498, 80 S.Ct. 419, 424, 426-27, 428-30, 432, 4 L.Ed.2d 454 (1960). Rather, some repeated, intermittent work stoppages are merely "unprotected" activity that may legally be the cause of discharge or discipline by the employer. See Robertson Indus., 560 F.2d at 398-99; Shelly & Anderson Furniture Mfg. Co. v. National Labor Relations Bd., 497 F.2d 1200, 1203 (9th Cir.1974). It would indeed be anomalous for us to read into the RLA a prohibition not in the NLRA. The union's resort to self-help thus violates no specific mandate of the RLA, and the injunctive relief sought by Pan Am is barred by Section 4 of the Norris-LaGuardia Act. See Pan Am., 306 F.2d at 846-47.[3]
 
 
 15
 Affirmed.
 
 
 
 [1]
 Between April and November 1988, the union wrote to Pan Am's chairman each month requesting a meeting, and Pan Am responded affirmatively. Nevertheless, no meetings were scheduled
 
 
 [2]
 Title 45 U.S.C. Sec. 152 (First) provides:
 It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.
 
 
 [3]
 We find meritless Pan Am's procedural complaints that the district court failed to give adequate de novo consideration to objections to the magistrate's recommendations and denied Pan Am permission to present additional testimony. Judge Glasser reviewed the record and the magistrate's recommendation and heard oral argument. That constituted adequate de novo review under 28 U.S.C. Sec. 636(b)(1). See United States v. Raddatz, 447 U.S. 667, 674-76, 100 S.Ct. 2406, 2411-13, 65 L.Ed.2d 424 (1980) (reliance on magistrate's recommendation is within discretion of district court); see also Grassia v. Scully, 892 F.2d 16, 19 (2d Cir.1989). Further, Judge Glasser did not abuse his discretion in denying Pan Am's request to present additional testimony on the question of purported differences in the parties' disputes. A district judge is not required to hear or rehear any witness, see Raddatz, 447 U.S. at 676, 100 S.Ct. at 2412, and Pan Am had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate. Moreover, it is not at all clear that the additional testimony would have been helpful. Cf. Fortunato v. Ford Motor Co., 464 F.2d 962, 967 (2d Cir.) (offer of proof required where significance of excluded testimony is not obvious), cert. denied, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972)