UNITED STATES of America,

v.

Lonnie LAKE, Alphonse Lake and Sylvester Lake, Defendants.

No. CR 01–641(ADS)(ARL).

United States District Court,
E.D. New York.

Feb. 1, 2003.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by Richard P. Donoghue, Assistant United States Attorney, Islip, NY.

Elizabeth Macedonio, Esq., New York, NY, for Defendant Lonnie Lake.

Peter J. Tomao, Esq., Garden City, NY, for Defendant Alphonse Lake.

Glenn A. Obedin, Esq., Islip, NY, for Defendant Sylvester Lake.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges of narcotics possession, narcotics distribution, and gun possession. Presently before the Court are objections by Alphonse Lake and Lonnie Lake to the Report and Recommendation ("Report") dated December 30, 2002 of United States Magistrate Judge Arlene Rosario Lindsay.

### I. BACKGROUND

The background of this case is incorporated in this Court's memorandum of decision and order dated October 5, 2002 and memorandum of decision and order dated October 24, 2002. Familiarity with these decisions is assumed.

In these decision, motions to suppress statements made by Alphonse Lake and Lonnie Lake were referred to Judge Lindsay to conduct a suppression hearing. On December 23, 2002, Judge Lindsay conducted a suppression hearing at which time the Government called Sergeant William Flanagan, Detective Michael Beckett and Detective James Canner as witnesses. Alphonse Lake called Yolanda Lake as a witness.

## A. As to Alphonse Lake

On January 7, 1999, at approximately 2:00 p.m., Alphonse Lake was at home with his infant child when approximately 5 or 6 police officers entered Lake's home to execute a search warrant. During the course of the search, Lake was discovered in possession of cocaine, was placed under arrest, handcuffed, and removed to the kitchen area where Sergeant Flanagan, a Nassau County police officer, was guarding him. It is undisputed that Lake was under arrest and was not informed of his *Miranda* rights while at his home.

Shortly after the search was initiated, the police officers permitted Lake to call his wife, Yolanda Lake, at work so she could come home to watch their child. At the hearing, Mrs. Lake stated that she arrived home a little after 2:30 pm. to find officers searching her home. She testified that after hearing her son wake up, she brought him into the living room, which was approximately 12 to 15 feet from, and directly adjacent to, the kitchen area where her husband was seated. Mrs. Lake testified that she was upset and holding her child on the sofa. In addition, she said she could look right into the kitchen where her husband was seated.

During the search, the officers discovered a gun in the couple's bedroom. After the gun was discovered, Detective Ludwig entered into the kitchen and, in the presence of Lake, informed Sergeant Flanagan that the officers had found a gun in the bedroom. Sergeant Flanagan testified that because Mrs. Lake was in earshot of Detective Ludwig, she could hear what the detective was saying. At the hearing, Sergeant Flanagan stated that at this time, he observed Lake exchange glances with his wife. Immediately thereafter, Detective Ludwig approached Mrs. Lake to ask whether she knew anything about the gun. Lake then stated that the gun was his and

that his wife did not know it was in their house. He also stated that he bought the gun in Rockaway.

Lake moves to suppress these statements.

## B. As to Lonnie Lake

On January 7, 1999, after being stopped by the police while driving a 1990 Toyota Celica, Lonnie Lake was arrested near his home located at 51 E. Market Street in Long Beach. Lake was removed from his vehicle and placed under arrest at approximately 10:25 a.m. He was then transported to the Nassau County Narcotics Bureau in Mineola. Although Lake was not informed of his *Miranda* rights, he asserted his right to counsel.

In the early afternoon, Lake requested that to be transported back to his home to assist in locking up his pet dogs. The officers granted his request and transported him back where approximately 15 to 20 officers were searching his home. Detective Beckett, who testified that he had known Lake for almost 20 years, moved Lake outside to a patrol car. Beckett testified that while he was in the patrol car, Lake asked him what the police were doing at his house, to which Beckett responded that he did not have that information. Lake then stated that he had a gun under a mattress.

Because a crowd began to form outside his home, Beckett testified that he removed Lake from the patrol car to move him inside his home. As they walked back into the home, and before Beckett had a chance to relay the information that Lake had a gun, another officer announced that they had discovered a gun. When Lake heard the announcement, he stated to Detective Vincent Buscemi, who Lake knew as, "Vinnie," that the gun is for protection.

Thereafter, Lake was taken back to the Narcotics Bureau for processing. During processing, Lake asked Detective Hanrahan what would happen to his vehicle. Detective James Canner testified that Detective Hanrahan responded that the vehicle would be retained because it contained a "trap." Lake protested and said that there was nothing in the trap and that he would prove it to the officers. Detective Canner testified that pursuant to Lake's offer, Hanrahan and Canner took Lake to his vehicle where he proceeded to "press a number of buttons, which included turning on the blower on high, pressing the rear defroster, and then [lowering] the front driver's side window" which opened a hidden compartment under the driver's floorboard. The compartment was empty.

Lake moves to suppress this series of statements.

## II. DISCUSSION

### A. Standard of Review

Pursuant to § 28 U.S.C. 636(b)(1), any party may file written objections to the report and recommendation of a magistrate judge within ten days after being served with a copy. *See also* Fed.R.Civ.P. 72(a). Once objections are filed, the district court is required to make a *de novo* determination as to those portions of the report and recommendation to which objections were made. *See* § 28 U.S.C. 636(b)(1); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). The phrase "*de novo* determination" in section 636(b)(1)—as opposed to "*de novo* hearing"—was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *U.S. v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Section 636 does not require the district court "to rehear the contested testimony in order to carry out the required 'determination.'" *Id.* at 674, 100 S.Ct. 2406. Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter. *See Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir.1990). Furthermore, the district judge may also, in his sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendations. *See U.S. v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

### B. Custodial Interrogation

The parties do not dispute that the both the defendants were in custody and were not given *Miranda* rights. The Government argues that the defendants' statements are admissible because they were voluntarily given and did not result from custodial interrogation.

As the Court noted in its October 5, 2002 decision, "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements." *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). To prevent such coercion and safeguard a suspect's privilege against self-incrimination, law enforcement officers must provide a suspect with *Miranda* warnings prior to conducting a custodial interrogation. *See id.; United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir.), *cert. denied*, 519 U.S. 850, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S.

291, 308, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

### 1. As to Alphonse Lake's Statement

In her Report, Judge Lindsay found that Alphonse Lake's statement was not elicited by custodial interrogation or its equivalent. In his objections to the Report, Lake argues that when Detective Ludwig advised Sergeant Flanagan in Lake's presence that the officers found a gun it was the "functional equivalent" of confronting Lake with this evidence. According to Lake, the officers should have known that by doing so they were reasonably likely to elicit an incriminating response from him. In addition, Lake contends that there was no indication that he spoke to protect his wife from further upset, and that even assuming he had, such police tactics would require suppression of the statement.

■ The Court finds Lake's argument to be without merit. After reviewing the transcripts for the suppression hearing held on December 23, 2002, the Court finds that Judge Lindsay correctly determined that the motion to suppress Lake's statement should be denied. The record shows that the officers merely exchanged information that a gun had been found. A review of the record also reveals that this announcement was neither addressed to nor directed at Lake. Furthermore, Judge Lindsay is correct in finding that the officers could not reasonably have anticipated that when they spoke to Mrs. Lake in an adjacent room, Lake would have assumed they were discussing the gun. In addition, the Court finds that it was reasonable for Judge Lindsay to conclude that based on a glance Lake received from his wife and because she was upset and crying, he volunteered that the gun was his and that his wife was not involved in order to protect his wife and to avoid further upset.

Therefore, the Court finds that Judge Lindsay correctly determined that Lake was not coerced or questioned in any way. Accordingly, the motion to suppress Lake's statement is denied.

### 2. As to Lonnie Lake's Statement

■ On January 8, 2003, the Court received a letter from Lonnie Lake stating that "Mr. Lake objects to Magistrate Lindsay's findings of fact and conclusions of law." However, Lake provides absolutely no grounds for his objection to Judge Lindsay's Report. In short, he provides no "*specific,* written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b) (emphasis added). Where a party makes only "conclusory or general objections, the court reviews the report and recommendation for clear error." *Parker v. Johnson,* No. 99–11805, 2001 WL 1029418, *1, 2001 U.S. Dist. LEXIS 13745, at *4 (S.D.N.Y. Sept. 6, 2001); *Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (determining that the court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *see also* Fed.R.Civ.P. 72(b) advisory committee's note (when no specific, written objections are filed, "the court need only satisfy itself that there is no clear error on the fact of the record in order to accept the recommendation.").

After carefully reviewing Judge Lindsay's well-reasoned and thorough Report, the Court concludes that her Report is not clearly erroneous. Judge Lindsay applied the proper standard and reasonably applied the facts obtained from all the testimony given at the suppression hearing to the law. Accordingly, the Court adopts Judge Lindsay's Report.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the objections by both Alphonse Lake and Lonnie Lake to Judge Lindsay's Report are **DENIED;** and it is further

**ORDERED,** that the Court adopts Judge Lindsay's Report in its entirety.

**SO ORDERED.**