UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert G. McMULLEN,
Defendant-Appellant.

No. 74–1551.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1975.

Decided May 30, 1975.

Rehearing Denied June 20, 1975.

John L. Fox, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Sarah Evans Barker, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant-appellant Robert G. McMullen was convicted by a jury for failure to comply with the employment tax accounting procedures prescribed by section 7512 of the Internal Revenue Code, 26 U.S.C. § 7512.[1] The defendant's failure related to the RETS Electronic Schools of Indiana, Inc. located in Indianapolis and engaged in the teaching of electronics. The taxes covered by the information filed against the defendant related to withheld federal income taxes and Social Security taxes which RETS had deducted from wages paid to its employees.

---

1. 26 U.S.C. § 7512 reads in pertinent part:

*Separate accounting for certain collected taxes, etc.*

   *(a) General rule.*—Whenever any person who is required to collect, account for, and pay over any tax imposed by subtitle C or by chapter 33—

(1) at the time and in the manner prescribed by law or regulations (A) fails to collect, truthfully account for, or pay over such tax, or (B) fails to make deposits, payments, or returns of such tax, and

The evidence showed that RETS in 1972 was not paying its withholding taxes quarterly as required by law and was delinquent. The Internal Revenue Service over a period of months attempted unsuccessfully to contact the defendant. These efforts included a certified warning letter to McMullen dated January 23, 1973 which was returned undelivered. Finally a hand delivered warning letter and a form (outlining the procedures for depositing the employment taxes) were given the defendant on February 15, 1973.

Thereafter McMullen entered into negotiations with the Service to pay the delinquent taxes in weekly installments; however, these negotiations fell through because of the defendant's failure to cooperate. Finally on April 30, 1973 the official notice provided in subsection 7512(b) was hand delivered to the defendant. McMullen received the notice, but refused to sign the required forms claiming he was not an officer of the corporation. On May 16, 1975 the Service again contacted the defendant about his continuing tax failures. On that occasion the defendant admitted that no separate bank account had been established as required by law. Prosecution followed.

The evidence showed that RETS had an accrued employment and Social Security tax liability of some $11,000 and that McMullen, since he ran the business, was the person responsible for the failure to comply with the statutory requirements. The evidence showed that McMullen had in the past been a listed officer of RETS and had at all relevant times been the person in apparent control of the financial and tax affairs of the business. He had conducted all communications between the Internal Revenue Service and RETS concerning delinquent payroll taxes, and had never suggested that any other officer or employee of the corporation be included in these communications. McMullen was one of three authorized signatories for RETS payroll checks, and was the person whose signature appeared on nearly all tax returns of that company. The evidence further indicated that McMullen did the hiring for RETS, set the salaries for its employees, conducted staff meetings, and appointed corporate officers. Frank A. Tesky, who was selected by McMullen to fill the office of president of RETS, testified that he had absolutely

---

(2) is notified, by notice delivered in hand to such person, of any such failure,

then all the requirements of subsection (b) shall be complied with. In the case of a corporation, partnership, or trust, notice delivered in hand to an officer, partner, or trustee, shall, for purposes of this section, be deemed to be notice delivered in hand to such corporation, partnership, or trust and to all officers, partners, trustees, and employees thereof.

*(b) Requirements.*—Any person who is required to collect, account for, and pay over any tax imposed by subtitle C or by chapter 33, if notice has been delivered to such person in accordance with subsection (a), shall collect the taxes imposed by subtitle C or chapter 33 which become collectible after delivery of such notice, shall (not later than the end of the second banking day after any amount of such taxes is collected) deposit such amount in a separate account in a bank (as defined in section 581), and shall keep the amount of such taxes in such account until payment over to the United States. Any such account shall be designated as a special fund in trust for the United States, payable to the United States by such person as trustee.

The penalty for failure to comply with subsection (b) of this section is provided in section 7215(a) of the Code, 26 U.S.C. § 7215(b), which reads:

*Offenses with respect to collected taxes*

*(a) Penalty.*—Any person who fails to comply with any provision of section 7512(b) shall, in addition to any other penalties provided by law, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than one year, or both, together with the costs of prosecution.

*(b) Exceptions.*—This section shall not apply—

(1) to any person, if such person shows that there was reasonable doubt as to (A) whether the law required collection of tax, or (B) who was required by law to collect tax, and

(2) to any person, if such person shows that the failure to comply with the provisions of section 7512(b) was due to circumstances beyond his control.

no idea why McMullen made him president and that he had no duties as president other than to sign papers when asked to do so by McMullen, and to sign payroll checks when McMullen was unavailable to do so himself.

I

The defendant's most substantial argument is that the Government failed to prove the essential elements of an offense under section 7512(b) and the enforcement provision, section 7215. His argument has three facets: first, that there was no showing of proper notice as required by section 7512(a)(2); second, that he was never shown to be a "person" within the contemplation of these statutes; and third, that there was insufficient evidence showing that he failed to open a section 7512(b) bank account.

■ The first of these arguments focuses on the last sentence of section 7512(a), and seeks to construe this sentence as descriptive of the exclusive means of serving notice under the statute when a corporation is involved. An examination of the full text and organization of section 7512(a) belies this construction. The essence of the section 7512(a) notice provision is that the "person who is required to collect, [truthfully] account for, and pay over" be afforded individual service, delivered in hand. This specific requirement is set off from the remainder of the text of section 7512(a) and represents the basic notice requirement for that section. The sentence defendant refers to receives no such emphasis, and it is difficult to believe that it could have been intended to fully supercede the individual notice requirement, since it undercuts that requirement by allowing service in-hand to any one corporate officer to suffice as notice to all other officers and employees of that corporation. Far from invalidating notice delivered directly to the "person responsible," this sentence merely authorizes a form of "substitute service" in the case of formal business and legal entities. Since the defendant received statutory notice by direct, in-hand delivery, this element of the offense was properly established.

■ In a related argument, the defendant says that in the present factual context sections 7512(b) and 7215 do not apply to individuals, but only to corporations. Support for this contention is purportedly found in the definition of "American employer" at 26 U.S.C. § 3121(h)(5). The short answer to this contention is that the term "employer" is not at issue in this case. The defendant is charged with being a "person who is required to collect, [truthfully] account for, and pay over" employment taxes. The question is not whether McMullen rather than the RETS company was the employer, or even whether RETS was ever shown to be a formal corporation at all; the decisive question is whether McMullen had such a relation to the employing entity as would give him control over its financial affairs. *Cf.* Adams v. United States, 504 F.2d 73, 75 (7th Cir. 1974); Haffa v. United States, 516 F.2d 931 (7th Cir. 1975). If he had such control, the law charges him with a duty to collect, truthfully account for, and pay over the withholding taxes of the employer entity. There is no question that McMullen had such control over the financial and other affairs of RETS and this element of the charge was therefore also established.

■ Finally, the defendant contends that the Government never showed a failure to establish a separate withholding tax bank account as required by section 7512(b). He says that the existence of three general accounts in his name precludes liability without proof that none of these accounts had the purpose of serving as such separate account. In quoting the statute and in analyzing the proofs, however, the defendant does not include any reference to the most critical sentence in section 7512(b) on this point:

> Any such account shall be designated as a special fund in trust for the United States, payable to the United States by such person as trustee.

The Government's proof showed that none of the three accounts referred to by McMullen was a designated trust account as required by the statute. In the absence of any contrary showing, the jury could reasonably have concluded that no such account existed.

## II

■ The defendant raises numerous alleged trial errors separate and apart from his sufficiency challenge. It is contended that the trial judge erred in allowing evidence of tax deficiencies of RETS for periods prior to the period during which the section 7215 offenses occurred. A reading of the language of section 7512 shows that the requirements outlined in section 7512(b) can only be imposed when a prior failure to collect, truthfully account for, or pay over has occurred. Proof of such prior failure was therefore necessary and material to proof of the section 7215 offense.

■ The defendant sought to introduce evidence that the withholding taxes for the periods covered by the information were ultimately paid. This evidence was excluded as irrelevant since the focus of section 7512 is not eventual payment, but timely payment, and an offense under section 7215 has nothing directly to do with payment at all, but with failure to comply with mandatory accounting procedures. ` These procedures are, of course, designed to avoid exactly what happened in this case: late payment. The evidence was properly excluded.

■ The trial judge instructed the jury that the term "person" as used in the statutes "includes corporations, and also an officer or employee of a corporation, who as such officer or employee is under a duty to perform the act in respect to which the violation, if any, occurs." This instruction is a near-verbatim rendition of 26 U.S.C. § 7343, which defines "person" for the purposes of section 7215. We have previously held that the persons required to collect, truthfully account for, or pay over employee withholding taxes in the penalty context include all those with significant control over the financial decision-making process within such a corporation, Adams v. United States, 504 F.2d 73 (7th Cir. 1974), and we see no reason why a different definition would be appropriate here. The instruction was a proper one.

■ The Government introduced an Internal Revenue letter which was sent to RETS, to the attention of Robert G. McMullen, Administrator. · This letter informed McMullen that withholding taxes were not being paid over to the Government and warned that if the situation did not improve, RETS would be required to comply with the procedures set out in section 7512 of the Internal Revenue Code. Objection is made to the admission of this evidence on the ground that it is irrelevant because it refers to McMullen as administrator of RETS, whereas the information describes him as a vice-president of RETS. Reliance on this imagined distinction is frivolous. The exhibit was relevant to establish that no doubt could have existed concerning the legal requirement that such taxes be paid, and to show the procedural steps taken prior to invocation of section 7512 by the Government.

■ Certain RETS checks and related bank statements were offered to show that employee wages were being paid during the period covered by the information, August 10, 1973 through November 30, 1973. Objection is made that some of these checks bear dates not specifically mentioned in the information, which listed seventeen specific dates representing weekly "paydays." Obviously wages paid during a pay week but not on payday would be relevant to show payment of wages during the period of the information, and the mere fact that some checks were not dated on the paydays listed is an inconsequential and harmless variance. Defendant's additional argument that any checks not bearing his signature should not have been admitted is also groundless since responsibility for withholding taxes does not turn on the ministerial act of signing checks but on authority to control the disposition of funds.

Two certificates of corporate resolution of RETS given to the Indiana National Bank, Indianapolis were introduced in conjunction with evidence that McMullen handled any banking matters for RETS. Objection is made that these resolutions are dated in April 1971 and that this does not fall within the period of the information. However, these documents do show that when a certain checking account was opened by RETS, McMullen was one of three persons authorized to write checks on the account, and in the absence of evidence of a countermanding resolution this would tend to show continued authority to do so. Moreover, the certificates both show the notation 15–020–959, the account number appearing on several checks signed by McMullen during the period of the information. These same considerations support the admission of a bank signature card made out and signed in conjunction with the certificates of resolution.

Having reviewed defendant's contentions, we are convinced that his conviction must be affirmed.