Gerald MATIS, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 96–CV–5956(JS).

United States District Court, E.D. New York.

March 15, 1999.

564

Thomas F. DeCaro, Jr., Upper Marlboro, MD, Robert Neill, Banks & Neill, Huntington, NY, for Plaintiff–Appellant.

Jennifer M. Blunt, Allan Shapiro, Trial Attorneys, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant–Appellee.

## ORDER ADOPTING REPORT AND RECOMMENDATION

SEYBERT, District Judge.

Pending before the Court is Plaintiff–Appellant's Gerald Matis' objections to United States Magistrate Judge Arlene Rosario Lindsay's Report and Recommen-

dation of February 19, 1999, advising this Court to affirm the October 2, 1996 Order of the United States Bankruptcy Court Judge Francis G. Conrad, granting the government's motion for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c), while reversing the judgment and remanding the matter back to the bankruptcy court with instruction to ascertain the amount actually due and owing and enter judgment in said amount.

## DISCUSSION

■ Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the Report and Recommendation of the Magistrate Judge within ten days after being served with a copy. *See also* Fed.R.Civ.P. 72(a). Once objections are filed the district court is required to make a de novo determination as to those portions of the Report and Recommendation to which objections were made. *See* 28 U.S.C. § 636(b)(1); *see also Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). Although the district court may "receive further evidence or recommit the matter to the magistrate with instructions" 28 U.S.C. § 636(b)(1), a de novo determination does not require the recalling of witnesses. *See United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter, if necessary. *See Pan Am. World Airways, Inc. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 894 F.2d 36, 40 n. 3 (2d Cir.1990).

Familiarity with the procedural and factual history of this case is presumed and will not be repeated herein. Plaintiff–Appellant Gerald Matis objects to Magistrate Lindsay's Report and Recommendation on eight grounds.

The first objection primarily concurs with Magistrate Lindsay's recommendation to consider all payments made to date in ascertaining the present tax liability.

The remainder of the objections present facts which Plaintiff–Appellant maintains precludes a finding of a "responsible person" as defined and interpreted under the Internal Revenue Code, 26 U.S.C. § 6671. The facts raised were considered by Judges Conrad and Lindsay, and their respective analyses are proper and well-founded.

In making a determination that Plaintiff was a responsible person who willfully violated Section 6672 of the Internal Revenue Code, Bankruptcy Judge Conrad and Magistrate Judge Lindsay each independently considered the following facts, among others, germane, and in the aggregate, decisive. Matis was one of the initial founders of Triangle Consulting Inc. ("Triangle") and he held a one-third interest in the company which was later reduced to one-quarter share. Matis was initially Triangle's President and later became Vice-President of Development. Matis was a member of the Board of Directors, attended board meetings, and was a major shareholder. In addition, Matis was one of three signatories to Triangle's bank account. Matis was aware of the tax liability and inquired from time to time concerning its status.

There is no disputing Triangle's liability for trust fund taxes as assessed, although the amount owing is controverted. Section 6672(a) of the Internal Revenue code provides:

Any person required to collect, truthfully account for and pay over any tax imposed by this title who willfully fails to collect such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

■ Person is defined in Section 6671(b) as follows, "[t]he term 'person', as

used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." Thus, "[t]he term 'any person required to' perform the collection, accounting, or payment functions described in § 6672(a) has been construed to include any individual who is a 'responsible person' for collection and payment of the employer's taxes." *United States v. Rem,* 38 F.3d 634, 642 (2d Cir.1994) (internal quotations and citations omitted). "[C]ourts generally take a broad view of who qualifies as a responsible person" and more than one individual may so qualify. *Fiataruolo v. United States,* 8 F.3d 930, 938–39 (2d Cir.1993). Further, a responsible person need not be the corporate official with the most responsibility or authority, nor the person with the final word as to which creditors should be paid in order to be subject to liability. *Rem,* 38 F.3d at 642 (citations omitted). Numerous factors are considered and no single factor is dispositive is determining "whether the individual had significant control over the enterprises finances." *Fiataruolo,* 8 F.3d at 939 (quotations omitted).

▆▆▆ Before liability is imposed a finding of willfulness is required, however, willfulness does not entail evil motive or intent to defraud, rather, it requires the responsible person to have knowledge of the company's obligation to pay withholding taxes, while being aware that company funds were being used for other purposes instead. *See Hochstein v. United States,* 900 F.2d 543, 547 (2d Cir.1990).

▆▆▆ Finally, the individual bears the burden at trial of proving by a preponderance of the evidence that he is not a responsible person. *Hochstein,* 900 F.2d at 546; *see also Attick v. United States,* 904 F.Supp. 77, 80 (D.Conn.1995).

Appellant Gerald Matis has failed to satisfy this burden. All other arguments raised in Appellant's objections are without merit.

Having completely reviewed Judge Lindsay's thoughtful and thorough Report and Recommendation, as well as all of the submissions and objections of the parties, and the trial transcript and record below, the Court fully agrees with Judge Lindsay's recommendations for both the reasons stated above and those set forth in her report.

## CONCLUSION

Accordingly, the Report and Recommendation of United States Magistrate Judge Arlene Rosario Lindsay, dated February 18, 1999, is hereby adopted in its entirety.

▆▆▆ The October 2, 1996 Order of Bankruptcy Court Judge Francis G. Conrad granting the government's motion for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c), finding Gerald Matis a responsible person for the trust fund tax liability of Triangle Consulting in violation of Section 6672 of the Internal Revenue Code is hereby affirmed.

▆▆▆ The case is remanded back to Bankruptcy Court Judge Francis G. Conrad of the Eastern District of New York to hold a hearing, if necessary, and to make a final determination of the amount of tax liability actually due and owing and enter judgment in favor of the United States against Gerald Matis in said amount. The Clerk of the Court hereby is directed to close the case.

SO ORDERED.

## REPORT & RECOMMENDATION

LINDSAY, United States Magistrate Judge.

Presently before the court is the appeal of Gerald Matis from the October 2, 1996 order of the United States Bankruptcy Court for the Eastern District of New York (Conrad, B.J.) granting the government's motion for a judgment on partial

findings pursuant to Federal Rule of Civil Procedure 52(c). Specifically, the Bankruptcy Court determined that appellant failed to meet his burden of establishing that the Internal Revenue Service ("IRS") erroneously concluded that he was a responsible party who willfully failed to pay employee payroll taxes to the IRS in violation of the Internal Revenue Code ("IRC"), 26 U.S.C. section 6672(a).[1]

For the following reasons, this court recommends that the District Court affirm the Bankruptcy Court's finding that appellant was a responsible person who willfully violated section 6672 of the Internal Revenue Code. The undersigned further recommends that the District Court reverse the judgment of Bankruptcy Court to the extent that the sum awarded exceeds that amount actually due and owing from Appellant, and remand with the instruction that the Bankruptcy Court ascertain and enter judgment in said amount.

## BACKGROUND

### I. The Record

On October 2, 1996, a bench trial was held at which the only witness to testify was Gerald Matis, the appellant. Matis testified that on or about August 1, 1981, he founded Triangle Consulting ("Triangle") along with Art Marino and Dave Riba. (Tr.13–14).[2] Matis became a shareholder with a one-third interest Triangle,[3] and was designated President of the company from its inception. (Tr.15). Matis's responsibilities included "technical interview[ing]." He also participated in informal shareholder or board meetings during which important company business was discussed. (Tr.20). Matis was one of three signatories to the corporation's bank ac-

count, and remained so until Triangle's dissolution in 1992. (Tr.15). On average, Matis was physically present in the office for less than an hour per week; however, he would generally phone the office every day to learn of developments. (Tr.55).

According to Matis, responsibility for payment of the corporation's bills was delegated to Art Marino. Marino was also given responsibility for filing Triangle's payroll tax returns. Matis could not recall whether or not he himself had signed any of these returns (Tr.16), and he doubted that he wrote any checks on the company's behalf up until it was about a year old. Thereafter, "the only thing [that he] did by way of accounting was, [he] would write [ ] time sheets up so that they could be billed to clients." (Tr.18). Matis further stated that the only creditor payment that he initiated was for a membership to a trade organization and for a subscription to a trade magazine. (Tr.56).

In 1983 or 1984, an individual named Tom Secreto joined the company, reducing Matis's interest in Triangle to one-fourth. (Tr.22). Around this time, Matis's position was switched to that of Vice President of Development; however, he testified that his duties remained exactly the same.[4] (Tr.24).

Sometime during 1987, Matis was introduced to an individual who was to assist in taking Triangle public. (Tr.25, 26). Matis met with the individual at least three times to discuss this venture. (Tr.25). Triangle did indeed go public that same year; Matis remained the Vice–President of Development, and became both a shareholder of the corporation with a seven percent interest, and a member of the Board of Directors. (Tr.29). Matis testified that he

1. By Order dated October 14, 1998, the District Court referred this matter to the undersigned. *See* Referral Order of the Hon. Joanna Seybert, dated October 14, 1998.

2. The notation "Tr." refers to the transcript of the bench trial that took place before the Bankruptcy Court on October 2, 1996.

3. Matis's interest in the company eventually decreased, as discussed below.

4. It is unclear from the transcript when this change in title occurred; however, it appears to have been sometime in between 1984 and 1987.

was unsure as to the number of non-insiders who had invested in the company, but "heard" that it was between 350 and 800. (Tr.31).

The payroll tax liability giving rise to the instant litigation accrued in the second quarter of 1990. Matis recalled a board meeting, held in July of 1990, at which the fact that the company had not paid federal withholding taxes was discussed. (Tr.44). At this meeting, Matis instructed Doug Castle, Triangle's internal accountant, to contact the IRS and work out a repayment plan. (Tr.44, 63). A day or two later, Matis asked Castle about his contact with the IRS and learned that the IRS was unable to discuss the matter, as it had not yet "hit their computers." (Tr.46). Castle was told by the IRS to wait until they received their "first notice" from the IRS prior to attempting to set up a payment plan. (Tr.45–46).

Castle left the company shortly after the IRS's first notice was received. Responsibility for handling this and other accounting problems was passed to Bob Montelione. Matis spoke with Montelione about Triangle's tax delinquency in the fall of 1990. Montelione reported that contact had been made with the IRS, and that a monthly payment schedule had been worked out. (Tr.46–47). The status of this tax delinquency was something that Matis was concerned about, and he would casually inquire about the debt. Matis learned in early 1992 that the IRS was not being paid in accordance with the agreed schedule. Payments to the IRS were being made whenever Montelione considered it possible given the demands of Triangle's other creditors. Concluding that Montelione was acting in the best interests of the company, Matis acceded to this course of dealing with the IRS. (Tr.47, 57–60). During this time, Matis and the other principles were skipping paychecks on a regular

basis in order to pay Triangle employees. Matis himself received a salary of $26,000 for that year. (Tr.59).

At trial, a list of thirty-two checks, signed by Matis on behalf of the company in early 1990, were admitted into evidence. (Tr.39; Exh. 6). The majority of these were employee salary checks. Matis described that he signed this checks because he was the only corporate signatory in the office at the time. (Tr.40–42).[5] As a general rule, however, Matis states he did not issue checks and did not maintain the corporate checkbook. (Tr.48). Matis testified that if he needed to pay a bill, he would have to get the checks "approved"; such requests were never denied. (Tr.24).[6]

Beginning in 1990, Matis's attentiveness to company matters was blighted due to hip problems for which he eventually underwent replacement surgery in early January of 1991. (Tr.49). While recovering, Matis was visited by other company officers and was kept abreast of Triangle's financial condition; however, he testified that the tax debt was not discussed at these meetings. (Tr.51–52).

Matis testified that he was afflicted with chronic sleep apnea, and that this condition similarly affected his business involvement. His condition was active sometime during 1987, early 1988 and mid–1991. The sleep apnea caused Matis to fall asleep while looking at people, and he would "miss sections of meetings, particularly board meetings." (Tr.53, 54).

Sometime in 1992, Montelione reported to Matis that Triangle was no longer able to pay the IRS. (Tr.59–60). Matis told Montelione to "do the best" he could. (Tr.60). During this time Triangle was making whatever payments it could to stay in business including working out a deal with the landlord. (Tr.57–60). In September 1992, the IRS levied against Trian-

---

**5.** Matis went on to state that eventually the company acquired a check signing machine that bore another individual's name. (Tr.40).

**6.** Approval simply meant that Matis would submit a check request form to one of two persons charged with responsibility for actually issuing the check. (Tr.33–35).

gle for the outstanding payroll tax delinquency causing the company to go out of business.

At the close of Mr. Matis's direct testimony, the Bankruptcy Court granted the government's motion for a judgment on partial findings, pursuant to Rule 52(c).[7] (Tr.66–67). Specifically, the Bankruptcy Court found that Matis did not meet his burden of establishing that the IRS assessment against him pursuant to 26 U.S.C. § 6672 was erroneous, and thus found him to be a responsible person who willfully violated the Internal Revenue Code upon the failure of Triangle Consulting Corporation to pay withholding taxes due for the second quarter of 1990. (Tr.68).

## DISCUSSION

### I. Standard of Review

A judgment pursuant to Rule 52(c) "operates as a decision on the merits in favor of the moving party," *see In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr.S.D.N.Y.1998), and "should be granted where plaintiff fails to make out a prima facie case, or despite the prima facie case, the court determines that the preponderance of the evidence goes against the plaintiff's claim."[8] *Stokes v. Perry*, No. 94 Civ. 0573, 1997 WL 782131, at *9 (S.D.N.Y. Dec. 19, 1997). Despite Appellant's contentions to the contrary, a motion for a judgment on partial findings pursuant to Rule 52(c) does not require

that the court "draw any special inferences in the nonmovant's favor, or consider the evidence in the light most favorable to the nonmoving party." *See Regency Holdings*, 216 B.R. at 374; *see also Geddes v. Northwest Missouri State University*, 49 F.3d 426 (8th Cir.1995); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2573.1, at 496–97 (1995). Instead, "the court acts as both judge and jury, weighing the evidence, resolving any conflicts, and deciding where the preponderance lies." *Id.* The court's factual findings are reviewed under a "clearly erroneous standard," while its conclusions of law are subject to de novo review. *See MacDraw, Inc. v. The CIT Group Equipment Financing*, 157 F.3d 956, 960 (2d Cir.1998).

### II. The Requirements of Section 6672(a)

The Internal Revenue Code requires that employers remit withholding taxes to the IRS. *See* 26 U.S.C. § 7501(a). Such remittances must be made on a quarterly basis. *See United States v. Rem*, 38 F.3d 634, 642 (2d Cir.1994) (citing 26 C.F.R. § 31.6011(a)–4 (income taxes); 26 C.F.R. § 31.6011(a)–1 (FICA taxes)). Congress intended that such taxes be treated as a trust fund, accordingly, the failure to do so results in the imposition of personal liability upon any responsible person acting willfully.[9] *See* 26 U.S.C. 6672(a); *Spivak v. United States*, 370 F.2d 612 (2d Cir.1967).

---

7. At trial, the government stated that it was making its motion pursuant to Rule 50, the Federal Rule that governs a motion for a directed verdict upon a jury trial. (Tr.66). While the Bankruptcy Court does not expressly correct Appellee, it articulates that it is granting a verdict on partial findings of fact and conclusions of law. (Tr.67). The court thus references the title of Rule 52(c), the applicable rule when such a motion is made during a bench trial, and implicitly rectifies this error.

8.ˑ Specifically, Rule 52(c) provides:
 If during a trial without a jury a party has been fully heard on an issue and the court finds against the party no that issue, the court may enter judgment as a matter of

law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.....

9. Section 6672(a) of the provides:

 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax

### A. Responsible Person Requirement

#### 1. Standards

The phrase "[a]ny person required to perform the payment functions described in section 6672(a) has been interpreted to include any individual who is a 'responsible person' for collection and payment of the employer's taxes." *United States v. Rem*, 38 F.3d 634, 642 (2d Cir.1994); *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir. 1993) (quoting *Godfrey v. United States*, 748 F.2d 1568, 1574 (Fed.Cir.1984)); *see also Slodov v. United States*, 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). "[C]ourts generally take a broad view of who qualifies as a responsible person." *Fiataruolo*, 8 F.3d at 938. As such, more than one individual may qualify as a responsible person within the meaning of the statute. *See, e.g., Fiataruolo*, 8 F.3d at 939; *Kinnie v. United States*, 994 F.2d 279, 284 (6th Cir.1993).

An individual need not " 'have the final word as to which creditors should be paid in order to be subject to liability under this section.' " *Rem*, 38 F.3d at 642 (citing *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir.1990) (quoting *Gephart v. United States*, 818 F.2d 469, at 475)). The issue is " 'whether [he or she] has significant control over the enterprise's finances.' " *See Rem*, 38 F.3d at 642; *Fiataruolo*, 8 F.3d at 939 (quoting *Hochstein*, 900 F.2d at 547 (emphasis omitted)). "No single factor is dispositive in evaluating whether the individual had significant control; that determination must be made in light of 'the totality of the circumstances.' " *See Rem*, 38 F.3d at 642 (quoting *Fiataruolo*, 8 F.3d at 939).

▪▪ The Second Circuit has identified the following relevant factors to review upon making this determination:

Whether the individual (1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority.

*Id.* at 642 (citing *Fiataruolo*, 8 F.3d at 939). These factors illustrate that the statute was not created to "ensnare those who have merely technical authority or titular designation," *see Fiataruolo*, 8 F.3d at 939, but rather to include those individuals who are connected "closely enough with the business to prevent the [tax] default from occurring." *Id.* (quoting *Bowlen v. United States*, 956 F.2d at 728).

#### 2. Application

Many of the aforementioned factors indicating responsibility are met in the instant case. Matis's own testimony establishes that he was a founder of Triangle and the President of the corporation at its inception, later taking on the position of Vice President of Development. He was one of three signatories to the company account, and remained so until the corporation dissolved. Matis remained a major shareholder of the corporation throughout its lifetime. He was involved in the decision to take Triangle public, and at least from that point forward he was a member of the Board of Directors. Although Matis's chief area of responsibility did not involve the issuance of checks, it is clear that he had complete authority to do so when the need arose. The record reflects that Matis was free to and did sign payroll and other checks for the company when persons delegated this responsibility were unavailable. He participated in board meetings at which both the financial and business management of the company were discussed. Finally, Matis was well aware of the outstanding tax debt and had directed the company accountant to work

evaded, or not collected, or not accounted for and paid over.

out a payment plan. Thus, when exercising the requisite "broad view of who qualifies as a responsible person" under section 6672, see *Rem*, 38 F.3d at 642, these facts indicate that Matis indeed possessed the "power to compel ... the allocation of corporate funds." *Carter v. United States*, 717 F.Supp. 188, 192 (S.D.N.Y.1989) (quoting *Schwinger v. United States*, 652 F.Supp. 464, 466–67 (E.D.N.Y.1987)).

■ Matis essentially argues that in as much as he was not the company accountant, did not decide which creditors to pay, and did not have access to corporate checks he is not a "responsible person" as that term has been defined. This argument simply ignores the fact that Matis's position within the company gave him the necessary authority to exert influence over which creditors should be paid. Matis was aware of Triangle's tax debt. The record reflects that when Matis asserted his authority and directed that arrangements be made to pay the IRS, that directive was immediately followed. When Matis was later advised that payment of the tax debt was no longer being given priority and available funds were being used to pay other creditors, he did nothing. Matis opted to take no action although he was aware that tax monies which are held in trust were being diverted to pay the other obligations of the company. He cannot escape responsibility because he chose to defer to the judgment of others and stand passively by while this took place. The law is clear, that corporate officers cannot escape liability under Section 6672 by delegating responsibility for the payment of withholding taxes.

A review of applicable case law supports this conclusion. For example, in *Kalb v. United States*, the Second Circuit affirmed the district court's directed verdict of section 6672 liability against Herold. 505 F.2d 506, 511 (2d Cir.1974). The court stated that the decision was justified in light of the fact that Herold was both the president and a major shareholder of the company, he had participated in board meetings at which the tax problems were discussed, and had signed some tax returns and checks to the IRS for the company. These facts were "sufficient to make [Herold] a responsible person." *Id.* *See also Thibodeau v. United States*, 828 F.2d 1499, 1504 (11th Cir.1987) (debtor who was president, director, account signatory, and office manager with the authority to hire and fire people was a responsible person within the definition section 6672 as a matter of law); *see also Purdy Co. v. United States*, 814 F.2d 1183, 1188 (the key liability is power to control who gets paid); *Wood v. United States*, 808 F.2d 411, 415 (responsibility is matter of status, duty, and authority).

■ Matis's argument that the court must find that either Matis was responsible for physically writing out the requisite checks to the government or that " debtor took affirmative steps to avoid the payment of these taxes" is without merit. *See* Appellant's Brief at 8. The case law makes clear that for the purposes of the statute a responsible person need not be either the individual who has the "final word" as to which creditor is paid or the individual charged with the "ministerial act" of signing checks; "rather it is sufficient that the person have significant control over the disbursement of funds." *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir. 1990) (citations omitted). Where, as here, the totality of the circumstances indicate that, "an individual could have exerted influence" *see Fiataruolo*, 8 F.3d at 939, and had the "authority to control the disposition of funds," responsibility as provided for in section 6672 will attach. *See Fort v. United States*, No. 76–4186, 1981 WL 2256 (N.D.Ill.1981) (citing *United States v. McMullen*, 516 F.2d 917, 921 (7th Cir. 1975)).

**B. Willful Requirement**

**1. Standards**

Finding that an individual is a responsible person within the meaning of section

6672(a) does not end the inquiry, however. A court will not impose liability on a person unless his or her failure to collect, account for, or remit the withholding taxes was "willful." "To be willful, conduct need not stem from an 'evil motive or intent to defraud.'" *Rem*, 38 F.3d at 643 (quoting *Kalb v. United States*, 505 F.2d 506, 511 (2d Cir.1974)), "but it must amount to more than negligence." *Id.* The crux of the willful requirement is knowledge. That is, "a responsible person acted willfully within the meaning of section 6672(a) if he (a) knew of the company's obligation to pay withholding taxes, and (b) knew that company funds were being used for other purposes instead." *Id.* (citing *Hochstein*, 900 F.2d at 548; *United States v. Running*, 7 F.3d 1293, 1298 (7th Cir.1993)) ("a responsible person acts willfully when he permits funds of the corporation to be paid to other creditors when he is aware that withholding taxes due to the government have not been paid").

 Once it has been established that a responsible person had the requisite knowledge, "even the fact that he would have been discharged for paying the taxes is insufficient to make the failure to pay not willful." *Rem*, 38 F.3d at 643 (citing *Hochstein*, 900 F.2d at 548; *United States v. Running*, 7 F.3d at 1298). Similarly, even if a responsible person was unaware at the time that tax payments were due, or of his or her company's nonpayment of withholding taxes, an individual will still be "held liable for nonpayment with respect to any period during which he was a responsible person if, when he became aware of the delinquency, the company had liquid assets with which to pay the overdue taxes." *Id.* (citations omitted); *see also Kalb v. United States*, 505 F.2d at 511 ("Willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government."). The Court notes, however, that an individual's

failure to cause the payment is not willful if he or she reasonably believed that the taxes were actually being paid. *Id.* (citing *Kalb*, 505 F.2d at 511).

### 2. Application

The record, as developed before the Bankruptcy Court, belies Matis's contention that he did not act willfully. It is beyond dispute that Matis was aware that withholding taxes had not been paid. As stated above, the fact that Matis did not know of the debt until after it had accrued is irrelevant. Matis was also well aware that other creditors, including himself and other employees were preferred over the government despite his knowledge of the tax delinquency. (Tr.57–60). *See* Exh. 6.[10] Courts have construed paying corporate employees to rise to the requisite level of wilfulness within the section 6672. *See Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir.1990) ("For purposes of determining willfulness [pursuant to section 6672], an employee to whom the corporate employer owes wages is simply another creditor."); *see also Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988) (debtor's decision to pay employees when he knew of tax deficiency made his action willful).

Moreover, the record fails to support Matis's argument that he reasonably believed that the debt was being paid, and that this therefore negates any willfulness on his part. *See* Appellant's Brief, at 17. Matis was aware of the company's financial difficulties and was specifically advised that the IRS was only being paid whenever possible. However, as stated above, the responsibility to pay the taxes is not one that can be delegated, no matter how competent one perceives the delegatee. *See Fiataruolo v. United States*, 8 F.3d 930, 939 (2d Cir.1993). Matis's minor inquiries as to the status of the debt does little to ameliorate this perspective. That is, Matis's obligations with respect to the tax

---

**10.** Matis testified that he and other officers of the company continued to collect their sala-

ries during this period although at a reduced amount. (Tr.59).

debt could not be fulfilled by simply asking after its status on a few occasions.

Finally, Matis also argues that his hip replacement surgery and sleep apnea "affected" his attention to his duties as an officer and a director. *See* Appellant's Brief, at 17. The record reveals that the Bankruptcy Court considered this testimony at trial, and found that Appellant's sleep apnea was not in effect during the time at which the liability accrued. This finding is not clearly erroneous. (Tr.49–56). While that court made no specific finding with respect to Matis's hip replacement surgery, Appellant provides no support for the suggestion that such a condition rises to a level which would mitigate against a finding of willfulness.

### C. The Sum of Bankruptcy Court's Judgment

Matis argues that the Bankruptcy Court erred in entering a verdict in the amount of the original assessment against him, the sum in the amount of $102,864.66, rather than providing for the payments made by Matis and others so to reduce the amount now due and owing at trial, a sum of $82,435.41. *See* Appellant's Brief, at 18. The government agrees that the verdict should have reflected that amount currently due and owing from plaintiff, which is less than the assessment. *See* Brief of the Appellee, United States of America, at 4 n.2.

In light of the fact that the proceedings before the Bankruptcy Court were brought so to determine both the validity and the extent of the assessment entered against Matis, this Court agrees that the judgment should be reduced by that amount of money that had already been paid to the government. Accordingly, the undersigned recommends that the District Court reverse the judgment of Bankruptcy Court to the extent that it exceeded that amount which actually due and owing from Appellant, and remand with the instruction that it ascertain and enter judgment in said amount.

### CONCLUSION

For the forgoing reasons, the undersigned recommends that the District Court affirm the Bankruptcy Court's finding that Appellant was a responsible person who willfully violated the section 6672 of the Internal Revenue Code. The undersigned further recommends that the District Court reverse the judgment of Bankruptcy Court to the extent that the sum awarded exceeds that amount actually due and owing from Appellant, and remand with the instruction that said amount be ascertained and judgment entered accordingly.

Any objections to this report must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal this Court's Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Frank v. Johnson*, 968 F.2d 298 (2d Cir.1992); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

SO ORDERED.

Dated: Hauppauge, New York

February 18, 1999