**KIRKWOOD FABRICATORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 87–2110.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1988.

Decided Dec. 5, 1988.

Rehearing and Rehearing En Banc Denied Jan. 18, 1989.

Richard M. Stout, Weldon Spring, Mo., for petitioner.

Laurence S. Zakson, Washington, D.C., for respondent.

Before LAY, Chief Judge, FAGG, Circuit Judge, and DOTY, District Judge.*

DOTY, District Judge.

This case arises from the request of petitioner Kirkwood Fabricator's, Inc. ("Kirkwood") for review of a National Labor Relations Board order. By cross application, the Board seeks enforcement of its order. Two questions are presented for review. The first is whether the failure of an employer to bargain with its employee's union representative over the effects of its deci-sion to sell its entire business constitutes an unfair labor practice under §§ 8(a)(5) and 8(d) of the National Labor Relations Act ("Act"), as amended 49 Stat. 452, 29 U.S.C. §§ 158(a)(5) and 158(d) (1982). The second question presented is whether the Board's limited back pay remedy is appropriate.

The facts are undisputed. Kirkwood's origins began in 1946 when Robert S. Farmer started a family business. In 1958, Farmer incorporated his business, thereby creating Kirkwood, and he assumed the roles of Chief Operating Officer and Chairman of the Board. He was also majority stockholder of Kirkwood throughout its existence.

Kirkwood engaged in the steel fabricating business. In 1971, it joined the Greater St. Louis Steel Plate Fabricators Association. The Association existed for the purpose of representing its members in collective bargaining with Local 27, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("the Union"). As of June 4, 1986, Kirkwood employed 20 production and maintenance employees in the unit represented by the Union.

Chairman Farmer, age 72 at the time, decided in about June of 1985, to sell his business after having a heart operation in 1984 and experiencing about two years of poor business. In about February or March of 1986, Farmer found a buyer and set a closing date for June 4, 1986.

Farmer concealed his decision to sell from the Union and his employees. He testified that he did not notify the Union because the collective bargaining agreement did not require notification; because he did not want to lose top employees; and because he did not want to "queer the deal." Although there was a collective bargaining agreement in force between Kirkwood and the Union, the Board does not suggest the existence of any contractual requirement for Kirkwood to bargain re-

---

* The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minneso- ta, sitting by designation.

garding the effects of terminating the business.

On June 4, 1986, Kirkwood notified its employees that it would be permanently ceasing operations at the close of that day (Wednesday), and that its assets had been sold to a new company. Chairman Farmer told the employees that if they wished they could apply for employment with the purchaser on June 6, the following Friday.

The Union first heard of Kirkwood's decision to sell its business and terminate its operations on the afternoon of June 4, 1986. By letter dated June 10, 1986, the Union requested Kirkwood to bargain over the effects of its decision to sell. In a letter dated June 11, 1986, Kirkwood responded that Mr. Farmer was out of town, but would meet with the Union when he returned. Mr. Farmer never did meet with the Union, however, and has ever since refused to do so. On July 7, 1986, Kirkwood filed its Articles of Dissolution with the Secretary of State of the State of Missouri.

On September 29, 1986, the Union filed an unfair labor practice charge with the National Labor Relation Board. The General Counsel issued a complaint against Kirkwood on November 5, 1986, and on February 4, 1987, Robert W. Leiner, Administrative Law Judge (ALJ) for the Board declared Kirkwood's refusal to bargain over the effects of its decision to close a violation of § 8(a)(5) of the National Labor Relations Act. *Kirkwood Fabricators, Inc.*, No. 14–CA–18621, slip op. (NLRB Mo. Feb. 4, 1987).

The ALJ ordered Kirkwood to cease and desist from the unfair labor practices found. Affirmatively, the ALJ ordered Kirkwood, upon the Union's request, to bargain with the Union concerning the effects on its employees of the closing of its operation. In addition, due to Kirkwood's unlawful failure to bargain about the effects of its cessation of operations, the ALJ stated that the terminated employees were denied an opportunity to bargain at a time when Kirkwood might still have had a need of their services, and a measure of balanced bargaining power existed. *Id.* at 11.

Thus, he found that a bargaining order alone could not serve as an adequate remedy for the unfair labor practices committed. Accordingly, the ALJ also imposed a limited back pay order requiring the company to pay the employees their normal wage from five days after the National Labor Relations Board's decision adopting the ALJ's order until the parties reached an agreement or impasse in their bargaining over the effects of the closure. Further, the total back pay awarded by the ALJ would not be less than an amount equivalent to two weeks pay nor greater than an amount the employees would have received had they worked until the time they found alternative employment. Finally, the ALJ ordered Kirkwood to mail signed copies of a notice to the Union and its bargaining unit employees. On July 30, 1987, the National Labor Relations Board adopted the ALJ's order in all material respects.

## I.

■ This case raises a question of first impression in this court concerning an aspect of the appropriate scope of the subjects of mandatory bargaining required by §§ 8(a)(5) and 8(d) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and 158(d) (1982). Section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees * * *." Section 8(d) explicitly defines the scope of mandatory subjects of collective bargaining as the obligation "to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment." The Board, in this case, decided that the broad phrase "other terms and conditions of employment" included bargaining over the effects of Kirkwood's decision to sell its business.

Our review of the Board's determination is limited. "Construing and applying the duty to bargain and the language of § 8(d) * * * are tasks lying at the heart of the Board's function." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). This is so because "Congress made a conscious deci-

sion to [delegate] to the Board the primary responsibility of marking out the scope of the statutory language and of the statutory duty to bargain." *Id.* at 496, 99 S.Ct. at 1848–49. Our review, therefore, must "recognize without hesitation the primary function and responsibility of the Board", *NLRB v. Insurance Agents*, 361 U.S. 477, 499, 80 S.Ct. 419, 432, 4 L.Ed.2d 454 (1960), which is that "of applying the general provisions of the Act to the complexities of industrial life * * * and of [appraising] carefully the interests of both sides of any labor-management controversy in the diverse circumstances of particular cases 'from its special understanding of the actualities of industrial relations.'" *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963), quoting *NLRB v. Erie Steelworkers*, 357 U.S. 357, 362–363, 78 S.Ct. 1268, 1271, 2 L.Ed.2d 1383 (1958). If the Board's construction of the statute is reasonably defensible it should not be rejected merely because this Court might prefer another view of the statute. *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849.

While the Board admits that there is no duty to bargain over the decision to sell the business, the Board has held for over twenty years that bargaining over the effects on employees of a decision to sell a business, and completely close operations, is a mandatory subject of bargaining. *See New York Mirror, Division of the Hearst Corp.*, 151 NLRB 834, 838 n. 4 (1965) ("The effects on the employees of a change or termination of operations is a mandatory subject of bargaining * * * "); *Interstate Tool Co., Inc.*, 177 NLRB 686, 687 (1969) ("where an employer [sells] its business, eliminating employees' jobs, [we require] notice and bargaining about effects"); *Stagg Zipper Corp.*, 222 NLRB 1249, 1251 (1976) (duty to bargain over effects of total closure); *Merryweather Optical Co.*, 240 NLRB 1213 (1979) (same). Neither Courts of Appeals nor the Supreme Court, however, have affirmed the Board's position on this specific issue of mandatory effects bargaining in the context of a complete closing of a business.

Nevertheless, numerous Courts of Appeals (including this one) and the Supreme Court have unanimously affirmed the Board's position on the closely related issue of effects bargaining being required in the partial closing context. *See First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 681–82, 101 S.Ct. 2573, 2582, 69 L.Ed.2d 318 (1981) (stating that bargaining over the *effects* of a decision to *partially* close must be conducted in a meaningful manner and at a meaningful time); *Royal Typewriter Co. v. NLRB*, 533 F.2d 1030, 1039 (8th Cir.1979) ("an employer, although under no duty to bargain regarding his decision to close *a plant*, must nonetheless * * * bargain with the Union in good faith over those areas which are *affected* by such decisions.") (emphasis added); *NLRB v. Royal Plating & Polishing Co.*, 350 F.2d 191 (3rd Cir.1965). Moreover, the Ninth Circuit has extended the effects bargaining requirement to a company's decision to terminate and relocate its operations in a joint venture, *NLRB v. Transmarine Navigation Corp.*, 380 F.2d 933 (9th Cir.1967), and the Seventh Circuit has extended it to a Trustee in Bankruptcy's decision to completely terminate a bankruptcy's operations. *Yorke v. NLRB*, 709 F.2d 1138 (7th Cir.1983). The narrow question before us today, therefore, is whether the Board's longstanding position that the requirement to bargain over the effects of an employer's decision should extend to the closing and sale of a business under § 8(a)(5), is reasonably defensible. We hold that it is.

Requiring effects bargaining maintains an appropriate balance between an employer's right to close its business and an employee's need for some protection from arbitrary action. *Morrison Cafeterias Consolidated v. NLRB*, 431 F.2d 254, 257–58 (8th Cir.1970). The fact that an employer is completely terminating operations as opposed to partially closing some operations is not enough to tip the balance toward requiring employees to shoulder suddenly, and without warning, all the harsh effects of a termination and sale of a business which results in a loss of their jobs. While requiring reasonable notice and effects bargaining may make a sale of a business

more difficult, the "ravages of economic dislocation" inflicted on employees and their families terminated with no opportunity to plan their affects, *see Yorke v. NLRB*, 709 F.2d 1138, 1143 (1983), maintains the balance in favor of upholding the Board's determination as being reasonably defensible.[1] In this case, Chairman Farmer had about a year to plan his affairs before the sale occurred. Requiring Farmer to provide a few weeks notice to his employees and bargain with them over such things as pension fund payments, vacation pay, reference letters, extended health care benefits and severance pay so his employees can plan their affairs is not an unreasonably indefensible position. Therefore, we affirm the Board's determination.

## II.

We turn now to the propriety of the Board's back pay remedy. We note at the outset that the Board's remedy may be set aside only upon a showing of abuse of its broad discretion in its field of specialization. *NLRB v. Drapery Manufacturing*, 425 F.2d 1026, 1029 (8th Cir.1970).

The limited back pay remedy was imposed by the Board for the purpose of providing the Union some measure of bargaining strength which it would have had if Kirkwood had engaged in effects bargaining at the appropriate time. Ensuring meaningful bargaining comports with the primary objective of the Act. *Yorke v. NLRB*, 709 F.2d 1138, 1145 (7th Cir.1983). We therefore hold the Board's choice of the limited back pay remedy was within the broad discretion granted the Board by the Act.

The Board's order will be enforced.

---

**1.** Congress recently enacted a statute which requires employers of 100 or more employees to give their employees 60 days advance notice of partial *or complete* closures. *See* Worker Adjustment and Retraining Notification Act, P.L. 100–379, 102 Stat. 890 (1988). The Act does not come into effect until February 4, 1989. *Id.* at § 11. The fact that Congress itself determined notification should be required lends support to the proposition that the Board's determination is reasonably defensible.