# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2065

_____

| | | |
|---|---|---|
| National Labor Relations Board, | * | |
| | * | |
| Petitioner, | * | |
| | * | On Application for Enforcement |
| v. | * | of an Order of the National |
| | * | Labor Relations Board. |
| Waymouth Farms, Inc., | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 8, 1999

Filed: April 5, 1999

_____

Before BEAM and HEANEY, Circuit Judges, and GOLDBERG,[1] Judge of the U.S.
Court of International Trade.

_____

HEANEY, Circuit Judge.

The National Labor Relations Board (Board) petitions this court for enforcement
of its order issued against Waymouth Farms, Inc. (Company). We find that substantial
evidence in the record supports the Board's finding that the Company violated sections
8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1),

---

[1]The Honorable Richard W. Goldberg, Judge of the U.S. Court of International
Trade, sitting by designation.

by failing to bargain in good faith with the Milk Drivers and Dairy Employees Union, Teamsters Local 471 (Union) concerning the effects of the relocation of its facility on the bargaining-unit employees of the Company. We thus enforce that part of the Board's order requiring the Company to meet and negotiate in good faith with the Union regarding a plant-closing agreement. We refuse, however, to enforce that portion of the Board's order that requires the Company to bargain with the Union as the exclusive bargaining representative of its employees at the new site.

Section 8(a)(5) of the Act makes it an unfair labor practice for an employer to refuse to bargain collectively with a representative of its employees. This requirement includes the obligation to bargain about the effects of a decision to sell or relocate a business. See First Nat'l Maintenance Corp. v. NLRB, 452 U.S. 666, 677 n.15, 681-82 (1981); NLRB v. Litton Fin. Printing, 893 F.2d 1128, 1133-34 (9th Cir.), cert. denied on this issue, 498 U.S. 966 (1990); Kirkwood Fabricators, Inc. v. NLRB, 862 F.2d 1303, 1305-07 (8th Cir. 1988).

We agree with the Board that the Company failed to engage in good faith bargaining with the Union over the plant closing agreement. The record reveals that the Company, operating in Plymouth, Minnesota, signed an agreement on April 17, 1993 to purchase a new facility that was located in New Hope, Minnesota, within seven miles of the existing facility. Notwithstanding this fact, on April 23, 1993 the Company notified the Union that the existing Plymouth facility would possibly be closed because of an inability to renew the lease with satisfactory terms. The Company added that it was considering several options, including relocation outside of the state of Minnesota. This misrepresentation concerning relocation to another state was repeated verbally to the Union on a number of occasions. Thereafter, the Company told the Union it was just starting to look at new locations, including some outside of the state, when it had already made a commitment to relocate to New Hope. The Company even went so far as to tell the Union on May 13, 1993 that it was considering

sites in California and South Dakota as well as sites in three Minnesota locations: Buffalo, Eagan, and Eden Prairie.

In making these and other misrepresentations, the Company violated its duty to bargain in good faith. Honest relocation information was necessary if the Union were adequately to represent the employees of the bargaining unit with respect to the effects of the relocation. Because the Union received misleading information, it concentrated its efforts on seeking severance pay rather than negotiating about the effects of the plant closing.

We agree with the Board that the Company had a duty to supply truthful information so that the bargaining over the effects of the relocation decision could be conducted in a meaningful manner. See First Nat'l Maintenance Corp., 452 U.S. at 677 n.15, 681-82; Kirkwood Fabricators, Inc., 862 F.2d at 1306. We further agree with the Board that information as to the true location of the new facility was necessary. Had the Union been aware that the plant would only move seven miles, it might well have sought transfer benefits rather than focusing on severance benefits. In our view, the remedy selected by the Board for the Company's violation effectuated the policy of the Act. The remedy simply restores the parties, to the extent practicable, to the situation they would have been in but for the Company's refusal to bargain about the effects of the plant closing. Negotiations regarding a plant closing agreement should include such matters as transfer rights and severance needs of employees. If an agreement is reached, it must be embodied in a written and signed document.

The Board additionally ordered the reinstatement of three employees and imposed a back-pay remedy in favor of all employees under precedent articulated in

Transmarine Navigation Corp., 170 NLRB 389, 390 (1968), and approved by this court in Kirkwood.[2]

In our view, the Board erred in imposing the Transmarine remedy on Waymouth Farms with respect to all employees. As Transmarine and Kirkwood make clear the Transmarine back-pay remedy is limited to affected employees. Here, only three employers were affected, as all of the others were immediately hired by Waymouth Farms at its New Hope facility. Thus, the Transmarine remedy should be limited to the three employees and only they are entitled to the minimum two-weeks back-pay. The issue of whether the three employees are entitled to reinstatement should be resolved in renegotiations that will ensue on remand.

We also refuse to enforce the Board's order insofar as it requires the Company to bargain with the Union for a new collective bargaining agreement at the new facility. The fact is that during the parties' negotiations in 1987, the parties agreed to the following clause in their collective bargaining agreement:

> The Company recognizes the union as its employee's [sic] sole and exclusive bargaining agent with respect to wages, hours of work and other conditions of employment pursuant to the certification of representation (Case No. 18-Rc-13980) of the National Labor Relations Board, dated August 13, 1986, for all regular full time and regular part time production

---

[2]The Transmarine remedy applied by the Board in this case essentially imposed a limited back-pay order, requiring the company to pay all employees their normal wage from five days after the Board's order until the parties reached an agreement on the plant closing renegotiation or the parties reached an impasse in their bargaining over the effects of the closure. The total back-pay award would not be less than an amount equivalent to two-weeks pay, nor greater than an amount the employees would have received had they worked from the time the plant relocated until they found alternative employment.

and maintenance employees, driver, woodshop, plexiglass and warehouse employees and lead men employed on jobs in its Plymouth, Minnesota plants, and at no other geographic locations but excluding office clerical employees, receptionists, sales employees, engineers, quality control department, research and development personnel, customer service employees, guards and supervisors as defined in the National Labor Relations Act as amended.

Appendix at 142, 148, 170.

The administrative law judge (ALJ) apparently recognized this contractual provision and did not order the Company to bargain with the Union for a new collective bargaining agreement at the new facility. The Board, however, modified the ALJ's order to require the Company to recognize and bargain with the Union as the bargaining representative of the employees at the new location. The Board now requests that we remand this portion of the Board's decision to permit it to reconsider its order that the Company bargain collectively with the Union for the employees at the new facility. We find no basis for such remand. In our view, the language of the initial collective bargaining agreement is clear and the Union is bound by it. The Union accepted the geographic limitation clause in exchange for a union security clause. It is bound by its decision.

For the reasons stated, the Board's request for enforcement of its order is denied in part and granted in part consistent with this opinion.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.