# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos.  00-3332/3753

_____

KING SOOPERS, INC.,                          *
                                             *
    Petitioner/Cross-Respondent,             *
                                             *    On Petition for Review and
                                             *    Cross-Petition for
v.                                           *    Enforcement of an Order of the
                                             *    National Labor Relations Board.
NATIONAL LABOR                               *
    RELATIONS BOARD,                         *
                                             *
    Respondent/Cross-Petitioner.             *

_____

Submitted:  April 10, 2001
Filed:   June 22, 2001

_____

Before HANSEN and BYE, Circuit Judges, and MELLOY,[1] District Judge.

_____

MELLOY, District Judge.

King Soopers, Inc. (King Soopers) appeals from an order of the National Labor Relations Board (the Board),  and the Board cross-appeals seeking enforcement of that order.  The Board held that King Soopers violated Section 8(a)(5) and (1) of the

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

National Labor Relations Act, 29 U.S.C. § 158 et seq., (the Act), by withdrawing recognition from the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, Local 26, AFL-CIO (Bakery Workers Local 26) and the United Food and Commercial Workers Union, Local 7 (UFCW Local 7), and by refusing to apply the collective-bargaining agreement to its relocated store in Broomfield, Colorado (Store #86). The Board also held that King Soopers violated Section 8(a)(5) and (1) of the Act by denying employee Lisa Hughson a transfer pursuant to its collective-bargaining agreement with Bakery Workers Local 26. Accordingly, the Board ordered that King Soopers abide the terms of its existing collective-bargaining agreements with the Unions and to make the employees whole for any losses they may have suffered from Kings Soopers' failure to apply the collective-bargaining agreement to Store #86. Because we agree with the Board's decision that King Soopers has so violated the Act, we deny King Sooper's appeal and enforce the Board's order.

I.

The following findings of fact by the Board are largely undisputed by the parties and are supported by the substantial weight of the evidence. King Soopers operates a chain of supermarkets in Colorado. Many of the stores are unionized, with the grocery and delicatessen employees at such stores being represented by the UFCW, and the bakery employees at such stores being represented by the Bakery Workers. Both Unions have had longstanding bargaining relationships in multi-store bargaining units covering all company stores located within the Denver metropolitan area. The multi-store Denver-area collective-bargaining agreements contained language that ceded to the Unions jurisdiction to represent employees at all existing stores and any future

stores established by King Soopers within the agreements' geographic limits before the agreements expired. This case concerns the store in Broomfield, Colorado, which the parties agreed fell just outside the parameters of the geographic limits of the Denver-area multi-store bargaining units.

The store, which was located in a facility at 120th Avenue in Broomfield, was established in 1987. It was King Soopers' first and only store in Broomfield. Shortly after the store was established, King Soopers agreed to a check of signed union authorization cards, and based upon a majority showing in that check, recognized the UFCW as the bargaining representative of the store's grocery and delicatessen employees.

King Soopers and the UFCW then entered into a collective-bargaining agreement, with a recognition provision that specified that the Union was the representative for all grocery and delicatessen employees at "the grocery store owned or operated by the Employer at 5150 West 120th Avenue." The recognition provision contained no future additional store language but instead added that the UFCW's "jurisdiction [is] to apply to the current store represented by the Union." No evidence was presented that the parties ever discussed, in the context of agreeing to a card-check or to the foregoing contract language, whether the UFCW might agree to waive the statutory rights of unit members to union representation and contract coverage in the event the Broomfield store was relocated to another facility.

King Soopers recognized the Bakery Workers as the exclusive bargaining representative of the Broomfield store's bakers and cake decorators ("bakery-

department employees") in 1990, based upon the results of a Board-conducted election. The election had been conducted among the store's bakery-department employees based upon a stipulation by the parties that such employees comprised an appropriate bargaining unit. The Bakery Workers and King Soopers then agreed to merge the Broomfield store bargaining unit into the existing Denver-area multi-store unit and to extend the Denver-area collective-bargaining agreement to the Broomfield store's bakery-department employees. In pertinent part, that agreement reads "effective February 25, 1990, the employees of the Broomfield bargaining unit shall be accreted into the Denver bargaining unit and by this agreement the Denver bargaining unit shall be expanded to cover the inclusion of this unit." The recognition provision in the 1997-2001 Denver-area collective-bargaining agreement covers "all work historically covered by this Agreement." No evidence was presented that the parties ever discussed, in the context of agreeing to an election to the foregoing contract language, whether the Bakery Workers might agree to waive the statutory rights of unit members to union representation and contract coverage in the event the Broomfield store was relocated to another facility.

On September 8, 1998, Steve DiCroce, King Soopers' Director of Human Resources, sent a letter to each grocery and delicatessen employee at King Soopers' 120th Avenue Store in Broomfield (denominated as "Store 8"). The letter states that the 120th Avenue Store was being closed and that the employees would be offered employment under nonunion terms at a new store (denominated as "Store 86") being opened a quarter-mile away on Sheridan Boulevard. On September 28, DiCroce sent the UFCW a letter stating that King Soopers would not recognize the UFCW as the exclusive bargaining representative of the grocery and delicatessen employees at the

new Broomfield store unless and until the Union demonstrated its majority status through a Board-conducted election.  In a letter dated November 24, UFCW President Ernest Duran responded that the parties' collective-bargaining agreement applied at the Broomfield store's new location.  Several weeks later, by letter dated December 7, an attorney for the UFCW informed King Soopers that the UFCW was demanding recognition as the exclusive bargaining representative of the grocery and delicatessen employees at the store's new location, and was also demanding that the current collective-bargaining agreement be applied at that location.

Meanwhile, by letter dated September 30, King Soopers notified the Bakery Workers that King Soopers would not recognize the Bakery Workers at the new Broomfield store unless and until it won a Board-conducted election.  Company Human Resources Director DiCroce then suggested to the president of the Bakery Workers, Avron Bergman, that the parties proceed to a card-check as an alternative to a Board election.  Bergman responded that the new store was simply a replacement for the store that was being closed and that the collective-bargaining agreement between the parties therefore automatically applied.

On December 8, King Soopers closed its 120th Avenue store; the next day, it opened its new store on Sheridan Boulevard.  Nearly all the employees from the closed store transferred to the Sheridan Boulevard store, where they continued to perform the same jobs under the same work schedules and under the same managers.  The new store was larger and newer, but there were no significant operational differences between the two stores.  King Soopers, however, effected wholesale changes in terms and conditions of employment when the new store opened; it stopped following the

terms and conditions of employment embodied in its union contracts, including its obligation to make contributions to union pension funds and to deduct union dues pursuant to duly executed union checkoffs, and instead implemented the terms and conditions that it employed at its nonunion operations.

Thereafter, Lisa Hughson, a cake decorator at the new store, Store 86, sought to exercise transfer rights to another Denver-area store but was denied a transfer on the grounds that Store 86 was outside the Denver bargaining unit and that there were no contractual transfer rights for her to exercise.

II.

First, we address the appropriate standard of review. This Court affords the Board's order great deference and will enforce the order if the Board correctly applied the law and if its findings of fact are supported by substantial evidence on the record as a whole, even if we might have reached a different decision had the matter been before us de novo. Pace Indus., Inc. v. NLRB, 118 F.3d 585, 590 (8th Cir. 1997) (internal quotations omitted); Town & Country Elec., Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997); Universal Camera Corp. v. NLRB, 340 U.S. 474, 490-91 (1951). Indeed, it is well established that the NLRB has "broad authority to construe provisions of the Act," and we must defer to NLRB decisions provided they are "not irrational or inconsistent with the Act." NLRB v. Financial Inst. Employees, 475 U.S. 192, 202 (1986).

As stated earlier, this case arises out of the relocation of one of King Soopers' supermarket stores, Store #8, which was originally covered by a collective-bargaining agreement between King Soopers and UFCW Local 7 and Bakery Workers Local 26. King Soopers challenges the Board's finding that this collective-bargaining agreement applied to its relocated store, Store #86. We begin our analysis with the well-established precept of labor law "that for the life of a collective-bargaining agreement the status of the union as exclusive bargaining representative may not ordinarily be questioned." NLRB v. Marine Optical, Inc., 671 F.2d 11, 16 (1st Cir. 1982); see also NLRB v. Rock Bottom Stores, 51 F.3d 366, 370 (2d Cir. 1995) (explaining this legal principle "is intended to promote industrial peace by stabilizing, for a reasonable term, a contractual relationship between employer and unit"); Westwood Import Co. v. NLRB, 681 F.2d 664, 666 (9th Cir. 1982). This long-standing rule "prohibits employers from petitioning the Board for decertification of a union and from repudiating the contract or withdrawing recognition from and refusing to bargain with a union during the term of the collective bargaining agreement" absent proof of "unusual circumstances." Rock Bottom, 51 F.3d at 370. A workplace relocation, the scenario at issue here, is not considered the type of "unusual circumstance" which prevents the application of this rule. Id. Indeed, as recognized by the Third Circuit, to conclude otherwise would permit any employer to push "the Union ...out the door" whenever an employer might opt to "modernize its facility." Molded Acoustical Prods., Inc. v. NLRB, 815 F.2d 934, 940 (3d Cir. 1987).

Thus, when there is a relocation of a workplace covered by an extant collective-bargaining agreement, the determination of whether that agreement remains in force after the relocation turns on the "continuity of enterprise" between the old and new

workplace. See Leach Corp. v. NLRB, 54 F.3d 802, 809 (D.C. Cir. 1995) (recognizing "the continuity requirement ensures that despite changes in management, plant location or production techniques, workplace conditions remain sufficiently unchanged such that the union can still fairly be presumed to command majority support in the unit."(internal quotations omitted)); and Rock Bottom, 51 F.3d at 370 (finding in relocation cases courts look "to evidence regarding the continuity of the bargaining unit and the employer's operations in order to determine whether the contract should bar a representation election at the new location"). The following factors have been used by the Board in determining whether the requisite continuity exists: "(1) continuity of operational methods, managerial hierarchy, customers, and services or products; (2) distance between the old and new plants; and (3) changes in either the size, makeup, or the identity of the employee complement." Westwood, 681 F.2d at 666. "In light of the Board's competence in this area, its determination of the composition of a bargaining unit is generally entitled to our deference." Marine Optical, 671 F.2d at 16.

In the instant case, the Board found, and the undisputed evidence revealed, that the two stores were only a quarter-mile apart, that nearly all the employees from Store #8 transferred to Store #86, that they worked under the exact same supervision and management, and that they performed the exact same job. Thus, applying the principles outlined above, the Board concluded King Soopers violated Section 8(a)(5) and (1) of the Act by repudiating its recognition of the collective-bargaining agreement after the relocation.

King Soopers does not appear to dispute the Board's finding that there was no substantial change in operations between the old and new stores. Instead, King

-8-

Soopers maintains the Unions waived their statutory right to continued representation and contract coverage in the event of a relocation by agreeing to unit descriptions confined to the address of Store #8. The unit description reads in pertinent part:

> All employees actively engaged in the handling and selling of merchandise, including part-time workers who work regularly one (1) day or more a week, and delicatessen employees, employed by the Employer in the grocery store owned and operated by *the Employer at 5150 West 120ᵗʰ Avenue, Broomfield, Colorado.* (emphasis added).

Again, we begin with the premise that an employee's right to continued representation by a union after a relocation is a statutorily protected right. As such, a waiver of that right must be clear and unmistakable. Marine Optical, 671 F.2d at 16 (finding waiver of a union's claim to continue representation on relocation of an employer's plant must be clear and unmistakable); Porta-King Bldg. Sys., Div. of Jay Henges Enters. v. NLRB, 14 F.3d 1258, 1263-64 (8th Cir. 1994) (finding employer failed to make clear and unmistakable showing that union waived its right to bargain over layoffs), citing Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708 (1983).

To this end, King Soopers maintains that the aforementioned address-specific recognition clause was agreed upon by the parties and it, along with the bargaining history of the parties, constitutes a waiver like that discussed by this Court in NLRB v. Waymouth Farms, 172 F.3d 598 (8th Cir. 1999). King Soopers' argument lacks both the factual and legal predicate to withstand this Court's scrutiny. While King Soopers repeatedly points to the parties' bargaining history as evidence of a knowing waiver of the Unions' statutory rights, the record is completely devoid of evidence to suggest the

parties ever discussed the recognition clause in the context of waiving future statutory rights, as opposed to simply agreeing to it as an adequate description of the unit. For instance, there is nothing in the record to suggest that the parties discussed the potential legal consequences of a possible future relocation of Store #8. Nor is there evidence in the record to suggest that the Unions agreed that the unit employees would forfeit all rights to union representation and continued contract coverage under the Act if King Soopers relocated the store a quarter mile away. Absent such evidence, the Board's conclusion that the address-specific recognition clause cannot be seen as a clear and unmistakable waiver of the Unions' statutory rights to continued representation is a sound application of settled law. Marine Optical, 671 F.2d at 16 (finding street address in unit description, alone, did not constitute a waiver).

Moreover, juxtaposing King Soopers' evidence of waiver to that before the Court in Waymouth Farms, the case on which the Company principally relies, it is apparent that the ruling in Waymouth Farms is not the talisman King Soopers' purports it to be. There, the bargaining history indisputably showed that in exchange for the union's agreement to limit recognition to the plants in one city, the employer agreed to a union security clause. The Board's administrative law judge found:

> One provision in the agreement, union security, was reached as part of a compromise in which the Union agreed that, if the Employer were to move away from Plymouth, or open new facilities, or, as the parties put it, "go across the street," then the Union would lose its right to recognition and its contract would be void. The Union was well aware that this was the interpretation of the Respondent throughout the negotiations.

<u>Waymouth Farms</u>, 324 NLRB 960, 966 n. 5 (1997).  Similarly, the recognition clause in <u>Waymouth Farms</u> clearly and unambiguously stated that the employer recognized the union at "its Plymouth, Minnesota plants, *and at no other geographic locations.*"  172 F.3d at 601 (emphasis added).  In fact, in that case there was no real dispute over whether the union intended to waive the statutory rights in the event of relocation. <u>Waymouth Farms</u>, 324 NLRB at 966.  Instead, at issue was whether the waiver was void where the company failed to provide timely notice of the subsequent plant relocation.  <u>Waymouth Farms</u>, 172 F.3d at 600-01.

Accordingly, the Board reasonably concluded that this Court's ruling in <u>Waymouth Farms</u> did not alter the outcome of this case, and King Soopers' defense of waiver should be rejected where there are no facts to support a finding of a clear and unmistakable waiver.  Instead, the record facts constitute substantial evidence for the Board's conclusion that the bargaining unit survived the relocation of the Broomfield Store.

III.

For the reasons stated herein, the order of the National Relations Labor Board is enforced in full.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.