# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1944
_____

National Labor Relations Board

*Petitioner*

Workers Organizing Committee of Kansas City

*Intervenor*

v.

EYM King of Missouri, LLC, doing business as Burger King

*Respondent*

_____

National Labor Relations Board

_____

Submitted: March 14, 2018
Filed: June 12, 2018
[Unpublished]

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

The National Labor Relations Board (Board) seeks to enforce an order issued against EYM King of Missouri, LLC, (EYM King) for violations of the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. (the Act). We conclude that substantial

evidence supports the Board's order and grant the Board's application for enforcement.

EYM King is a Burger King franchisee operating restaurants throughout Missouri, including a restaurant at 1102 East 47th Street, Kansas City, Missouri, which it purchased from Strategic Restaurants Acquisitions Company II, LLC, (Strategic) and took ownership of on March 26, 2015. LaReda Hayes worked as the Restaurant Manager for both EYM King and Strategic and was in charge of hiring staff for the 47th Street Burger King as it transitioned to its new ownership. Hayes hired several Strategic employees for EYM King positions, including Kashanna Coney, MyReisha Frazier, Myesha Vaughn, Susana de la Cruz Camilo, West Humbert, and Osmara Ortiz (collectively the workers). Hayes knew that the workers were involved in "union organizing activity."

Approximately three weeks after EYM King took ownership of the 47th Street Burger King, the workers participated in a one-day strike organized by the Workers' Organizing Committee of Kansas City. Each signed a strike notice that stated, "This is to notify you that on April 15th, 2015, we workers are going on strike for respect in the workplace." The strike notice explained that the workers were protesting "unfair labor practices, unsafe working conditions, unpredictable scheduling and wage theft occurring here, in workplaces in our city, and in solidarity with fast food and convenience store workers across the country." The strike notice signed by Coney, Frazier, and Vaughn was delivered to Hayes at 2:30 p.m. the day of the strike, but the strike notice signed by Camilo, Humbert, and Ortiz never arrived. As a result of the strike, none of the workers reported for their scheduled shifts.[1]

---

[1]On April 15, 2015, the day of the strike, Coney was scheduled to work from 4 p.m. to 10 p.m., Frazier was scheduled to work from 11 a.m. to 5 p.m., Vaughn was scheduled to work from 4:30 p.m. to 9 p.m., Camilo was scheduled to work from 2 p.m. to 10 p.m., Humbert was scheduled to work from 3 p.m. to 8 p.m., and Ortiz was scheduled to work 7 p.m. to 10 p.m.

Following this one-day strike, the workers returned for their next scheduled shift, and each received a disciplinary notice for not showing up to work on the day of the strike. In response, the Workers' Organizing Committee of Kansas City filed charges against EYM King with the Board, whose General Counsel subsequently filed a complaint alleging that EYM King had violated § 8(a)(1) of the Act.[2] Following an administrative hearing, the Administrative Law Judge (ALJ) found that EYM King had violated the Act. The Board agreed "with the [ALJ]'s ultimate finding that [EYM King] violated Sec. 8(a)(1) of the Act by disciplining six employees for participating in th[e] strike." EYM King of Mo., LLC, 365 N.L.R.B. No. 16 n. 4 (Jan. 24, 2017). The Board went on to state:

> We emphasize that employees had engaged in only that one strike against [EYM King] at the time it issued the discipline. Because the single 1-day strike was not an intermittent strike, we find it unnecessary to rely on the judge's analysis of when intermittent strike activity is protected.

Id.

"We will enforce the Board's order if it 'has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole, even if we might have reached a different decision had the matter been before us de novo.'" NLRB v. RELCO Locomotives, Inc., 734 F.3d 764, 779-80 (8th Cir. 2013) (quoting Town & Country Elec., Inc. v. NLRB, 106 F.3d 816, 819 (8th Cir. 1997)). "This Court affords the Board's order great deference[.]" King Soopers, Inc. v. NLRB, 254 F.3d 738, 742 (8th Cir. 2001). "[I]t is well established that the [Board] has 'broad authority to construe provisions of the Act,' and we must defer to [Board]

---

[2]This complaint was consolidated with two others before the ALJ and the Board. One of the cases was dismissed, and an opinion has been issued on the other. NLRB v. EYM King of Mo., LLC, 696 F. App'x 759 (8th Cir. 2017) (per curiam).

decisions provided they are 'not irrational or inconsistent with the Act.'" Id. (quoting NLRB v. Fin. Inst. Emps. of Am., Local 1182, 475 U.S. 192, 202 (1986)).

An employer engages in unfair labor practices when it "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of their rights" to "self-organiz[e], to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. §§ 157, 158(a)(1). EYM King's principal argument is that the workers' conduct is not protected because it was an "intermittent work stoppage[]" that is "[']merely unprotected activity that may legally be the cause of discharge or discipline by the employer.'" Brief of Respondent at 30 (quoting Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, 894 F.2d 36, 40 (2d Cir. 1990)). EYM King argues that the workers' strike here is connected with their previous strikes against Strategic and that under our precedent, "[h]arassing techniques, such as intermittent or recurrent strikes, have been held unprotected because they produce a situation that is 'neither strike nor work.'" Roseville Dodge, Inc. v. NLRB, 882 F.2d 1355, 1359 (8th Cir. 1989) (quoting NLRB v. Robertson Indus., 560 F.2d 396, 398 (9th Cir. 1976)). As the Board explained, however, the workers here did not engage in an intermittent or recurrent strike because they had not previously gone on strike against EYM King. Thus, the workers' conduct is protected by the Act.

EYM King argues in the alternative that it did not violate the Act when it disciplined Camilo, Humbert, or Ortiz because it did not know they were engaged in protected activity. EYM King asserts that because Hayes never received a strike notice from Camilo, Humbert, or Ortiz, she did not know they were on strike. We have explained, however, that "knowledge may be proved by circumstantial evidence from which such knowledge may be reasonably inferred." Alumbaugh Coal Corp. v. NLRB, 635 F.2d 1380, 1384 (8th Cir. 1980). Hayes testified during the administrative hearing that she knew Camilo and Humbert were part of the labor union before hiring them to work for EYM King. Testimony also confirmed that Ortiz had been active with the union during her employment with Hayes and that

-4-

Ortiz had previously gone on strike while working with Hayes. Given these facts, Hayes's knowledge of these employees' strike activity can be inferred, even in the absence of the receipt of a strike notice from Camilo, Humbert, and Ortiz.

EYM King further argues that even if Ortiz engaged in protected activity and that Hayes's knowledge of that activity can be inferred from the circumstances, Ortiz is still not protected by the Act because the strike rally ended at 6:00 p.m. and Ortiz's shift did not start until 7:00 p.m. The end of the rally, however, did not signify the end of the strike. The one-day strike was scheduled for April 15, 2015. Ortiz did not report to her April 15 shift. EYM King's argument to the contrary is unpersuasive.

We grant enforcement of the Board's order.

_____